The STATE of Ohio, Appellee,

v.

LORDI, Appellant.

[Cite as *State v. Lordi* (2000), 140 Ohio App.3d 561.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

Nos. 99 C.A. 62 and 99 C.A. 247.

Decided Oct. 20, 2000.

562

*Paul J. Gains*, Mahoning County Prosecuting Attorney, and *Janice T. O'Halloran*, Assistant Prosecuting Attorney; *Paul Nick*, Special Prosecutor, for appellee.

*Leonard Yelsky* and *Angelo Lonardo*; and *Mark Colucci*, for appellant.

W. DON READER, Judge.

Appellant Frank Lordi appeals a judgment of the Mahoning County Common Pleas Court convicting him of theft in office, R.C. 2921.41(A)(2), unlawful interest

in a public contract, R.C. 2921.42(A)(1), and two counts of conflict of interest, R.C. 102.03(D) and (E).

## ASSIGNMENTS OF ERROR

"I. The conviction in Count 4, unlawful interest in a public contract and the conviction in 8, conflict of interest, were against the manifest weight of the evidence.

"II. Counsel for the defendant provided defendant ineffective assistance in connection with counsel's failure to reveal and/or avoid a serious conflict of interest that was inherent in his representation of Frank Lordi; counsel for defendant failed to use important impeachment evidence that he had access to and counsel for the defendant neglected to request a mandatory jury instruction in connection with accomplice testimony."

Around 1997 or 1998, appellant purchased ABC Fire Extinguisher Company, and is the president of the company. Appellant also serves as a general partner in ABC Hood Cleaning Company. Appellant's brother, Ronald Lordi, is an employee of ABC. Appellant was elected Mahoning County Commissioner in 1992, taking office in January 1993. From 1993 through 1996, appellant served on the Issue 2 Committee on behalf of the county commissioners. This committee votes on requests for road improvements from various municipalities within the county. All such contracts had to be approved by the county commissioners.

In 1994, William Kovass, a local businessman, sought to construct a hotel in Mahoning County. Kovass was a principal partner in Meander Inn, which already owned a Best Western Hotel, and wanted to construct a Hampton Inn on the adjacent property. In order to construct the new hotel, Meander Inn took out five development loans, including a $180,000 Community Development Block Grant ("CDBG") administered by the Mahoning County Commissioners, and a $100,000 matching loan from the Mahoning County Revolving Loan Fund.

In his capacity as Mahoning County Commissioner, appellant signed an economic development agreement between Mahoning County and Meander Inn in September 1996, authorizing disbursement of the $180,000 loan. Mahoning County took a security interest in various fixtures owned by Meander Inn to secure payment of the loan and construct the Hampton Inn. In his capacity as Mahoning County Commissioner, appellant also moved and voted for the resolution that approved the $100,000 matching loan for the development project.

In late 1994 or early 1995, Kovass went to the Mahoning County Commissioner's office to make a presentation to the commissioners in support of his application for a CDBG loan. Appellant was present at this meeting. Following the presentation, appellant told Kovass "not to forget his brother for fire

extinguishers." Kovass felt that appellant solicited him to purchase fire extinguishers from ABC. Kovass told appellant to contact his business manager, Janet Perry.

Thereafter, an ABC employee came to Janet Perry's office and asked to do some work. Appellant's brother sent a price quote to Perry on May 16, 1995. Meander Inn did in fact purchase fire extinguishers, related equipment, and services from ABC, beginning in December 1995. The hotel opened in 1996.

On June 13, 1995, the Mahoning County Commissioners met at 10:00 a.m. to begin a luncheon tour at the Goshen Township Hall. The Goshen Township Trustees had asked the commissioners to look over their records because they were in bad shape. The trustees wanted to see what could be done as far as repairing the roads. The township clerk was aware that appellant was the Issue 2 representative for the Mahoning County Commissioners. All three commissioners, including appellant, rode through the township in a mini-bus with various Goshen Township officials, viewing the roads in need of repair. The group discussed how to fix the roads and looked to see if the commissioners could help the township.

When the trustees returned to the township garage, they proceeded to show the commissioners some of their equipment. The township clerk, Hilda Spack, stayed behind. Appellant stood and talked to Spack. Appellant saw their fire extinguisher and asked who serviced the extinguisher. Appellant told Spack that if the contract ever came up, he would like a chance to bid on it. According to Spack, she felt that appellant was soliciting the contract.

In 1994, appellant was a member of Democrats for Change, a grassroots effort to change the leadership of the Democratic Party in Mahoning County. The group planned to unseat Don Hanni, the party chairman, and replace him with Mike Morley, by electing their own party precinct members. Appellant's role in Democrats for Change was as part of the recruiting process. He reviewed the precinct list, seeking to identify people in the community who would run for precinct person. Appellant would then telephone and interview these people.

Joseph Veneroso and Fred Debonis were two individuals who assisted the Democrats for Change. Veneroso worked for the Mahoning County Building Inspector from March 1993 through May 1996. Debonis worked for the building inspector from December 1993 through May 1996, having been hired by appellant. Appellant directed both Veneroso and Debonis to pick up petitions for the Democrats for Change on county time and to do whatever the people on the committee asked them to do. Appellant told them that if anyone questioned them, they should tell them to call appellant and he would take care of the problem. When Debonis would mention to his boss that he and Veneroso needed to pick up petitions for Democrats for Change, his boss told the dispatcher not to

give them any calls that day. Debonis and Veneroso used a county-owned vehicle to pick up the petitions.

John Gillespie was a runner for Democrats for Change during the same time. According to Gillespie, on one occasion, he was asked to pick up some petitions in an outlying area of the county. He refused and had a physical confrontation with a committee member. Appellant was then called to find someone to pick up the petitions because they were "under the gun." Veneroso ultimately showed up at Democrats for Change with the required petitions.

On April 1, 1998, appellant was indicted on eighteen counts: arson, insurance fraud, two counts of theft in office, one count of coercion, seven counts of having an unlawful interest in a public contract, and six counts of conflict of interest. The charges of arson and insurance fraud were dismissed by the state because of insufficient evidence. The remaining charges were tried to a jury. The jury returned a verdict of guilty on one count of theft in office, one count of unlawful interest in a public contract, and two counts of conflict of interest. The jury found him not guilty of all other charges. Appellant was convicted in accordance with the jury's verdict.

I

Appellant argues that the judgment convicting him of unlawful interest in a contract, relating to the Meander Inn contract, and the judgment convicting him of conflict of interest, related to Goshen Township, are against the manifest weight of the evidence.

In considering a claim that a judgment is against the weight of the evidence, we must review the record, weigh the evidence and all reasonable inferences therefrom, consider the credibility of witnesses, and determine whether when resolving conflicts in the evidence the jury clearly lost its way. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546–547. The discretionary power to grant a new trial should be exercised only in the exceptional case when the evidence weighs heavily against conviction. *Id.*

Appellant was convicted of having an unlawful interest in a public contract:

"(A) No public official shall knowingly do any of the following:

"(1) Authorize, or employ the authority or influence of his office to secure authorization of any public contract in which he, a member of his family, or any of his business associates has an interest." R.C. 2921.42(A)(1).

Appellant argues that the grants to fund Meander Inn's economic development project did not constitute public contracts.

"Public contract" is defined:

"(1) 'Public contract' means any of the following:

"(a) The purchase or acquisition, or a contract for the purchase or acquisition, of property or services by or for the use of the state, any of its political subdivisions or any agency or instrumentality of either, including the employment of an individual by the state, any of its political subdivisions, or any agency or instrumentality of either;

"(b) A contract for the design, construction, alteration, repair, or maintenance of any public property." R.C. 2921.42(G)(1).

■ The economic development agreement awarded Meander Inn a $180,000 Community Development Block Grant. Resolution 95–1037, adopted by the county commissioners, awarded an additional $100,000 to be used to purchase specific real estate to construct an eighty-two-room hotel. In addition, Meander Inn agreed to use its best efforts to create twenty-nine new job opportunities in Mahoning County, including twenty-two permanent job opportunities that would be available to persons from low income households. Essentially, the Mahoning County Commissioners contracted with Meander Inn to provide economic developmental services to the county in exchange for an award of $280,000 in discretionary grant funds. The county acquired the benefit of the development services provided by Meander Inn, which resulted in the construction of a new hotel and the creation of new jobs. The agreement between Meander Inn and the county was therefore a "public contract" as defined by R.C 2921.42(G).

■ Appellant also argues that he and his company did not have a direct interest in the project. However, but for the grants provided by the Mahoning County Commissioners, the hotel would not have been constructed and ABC Fire Extinguisher Company would not have sold fire extinguishers, cases, and maintenance services to the hotel. Further, William Kovass testified that after he made his presentation to the commissioners in support of his application for a loan, appellant asked him not to forget his brother for fire extinguishers. Kovass testified that he felt that appellant solicited him to get the fire extinguishers from ABC. Subsequently, ABC Extinguishers sent a price quote to Meander Inn, and just six days before appellant moved and voted to approve the grant of revolving loan funds to Meander Inn, ABC began billing Meander Inn for inspections of the fire extinguishers and other services.

Further, a security agreement was incorporated into the economic development agreement, giving Mahoning County a security interest in the fixtures owned and to be acquired by the hotel, to secure payment of the loan. These fixtures, in which the county held a security interest, would include the fire extinguishers and the cases provided by appellant's company. Thus, when appellant signed the

economic development agreement, he was taking a security interest on property provided and maintained by his own company.

◼ Appellant was convicted of conflict of interest for his dealings with Goshen Township. R.C. 102.03(E) provides that no public official or employee shall solicit or accept anything of value that is of such character as to manifest substantial and improper influence upon the public official with respect to that person's duties.

Goshen Township had asked the commissioners to look over their roads because they were in bad shape and to see if the county could help the township repair the roads. Hilda Spack, the township clerk, was aware that appellant was the Issue 2 representative for the Mahoning County Commissioners, and, in this role, would vote on requests for road improvements from the township. After the tour, appellant examined the fire extinguisher in the township garage and asked Spack who serviced the extinguishers. He noted that the contract expired in six months, and told Spack that if the contract ever came up, he would like a chance to bid on the contract. Although Spack did not have decision-making authority on the issue, Spack testified that she felt that appellant solicited her for the contract. Although appellant ultimately did not bid on the contract, he solicited the contract at a meeting during which the township sought funds from a committee on which appellant had voting power. From the evidence, the jury could conclude that appellant's solicitation of the extinguisher contract on that date implied that he would aid the township if he had an opportunity to receive the extinguisher contract. The jury's verdict was not against the manifest weight of the evidence.

The first assignment of error is overruled.

## II

Appellant argues that his trial counsel was ineffective because he had an impermissible conflict of interest that prohibited him from properly representing appellant on the theft-in-office charge, he failed to use particular evidence in an attempt to impeach certain witnesses, and he failed to request a jury instruction concerning the testimony of an accomplice.

◼ Appellant raised the issue of ineffective assistance of counsel through a motion for new trial. Although a petition for post-conviction relief may provide a more effective and appropriate vehicle for the assertion of an ineffective-assistance-of-counsel claim, a defendant may validly assert the denial of effective assistance of counsel as a basis for new trial pursuant to Crim.R. 33(A)(1) or (E)(5). *State v. Judy* (July 23, 1986), Hamilton App. No. C–850796, unreported, 1986 WL 8100. On appeal from an entry denying a motion for new trial, a

reviewing court will not disturb the trial court's decision unless it determines that the trial court abused its discretion. *State v. Lane* (1976), 49 Ohio St.2d 77, 3 O.O.3d 45, 358 N.E.2d 1081, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3148, 57 L.Ed.2d 1155.

Appellant first argues that counsel had a conflict of interest that prevented him from representing appellant on the theft-in-office charge. Appellant was represented at trial by Lou D'Apolito. In an earlier case, Joseph Veneroso was represented David D'Apolito, cousin and law associate of appellant's trial counsel.

Where there is a right to counsel, the Sixth Amendment to the United States Constitution guarantees that representation shall be free from conflicts of interest. *State v. Dillon* (1995), 74 Ohio St.3d 166, 167, 657 N.E.2d 273, 274–275. Both defense counsel and the trial court are under an affirmative duty to ensure that a defendant's representation is conflict free. *Id.* The trial court's duty arises when the court knows or reasonably should know a possible conflict of interest exists, or when the defendant objects to multiple representation. *State v. Manross* (1988), 40 Ohio St.3d 180, 181, 532 N.E.2d 735, 736–737 certiorari denied (1989), 490 U.S. 1083, 109 S.Ct. 2106, 104 L.Ed.2d 667. When this duty arises, the court is constitutionally required to conduct an inquiry into a possible conflict of interest. A lawyer represents conflicting interests when on behalf of one client, it is his duty to contend for something which his duty to another client requires him to oppose. *Id.* at 182, 532 N.E.2d at 737–738. A possibility of conflict exists when the interests of the defendant may diverge at some point so as to place the attorney under inconsistent duties. *Id.* If a question of conflict of interest arises after trial, the defendant must prove an actual conflict of interest, as opposed to a serious potential for conflict. *Id.* at syllabus.

Based on the evidence adduced at the hearing on the motion for new trial, the court concluded that Veneroso was indicted for bribery in July 1996. In November 1996, pursuant to a plea bargain, he pleaded guilty to falsification. The bribery indictment was dismissed. He was sentenced to six months of house arrest. In January 1997, the sentence was modified to six months of non-reporting probation. There is nothing in the record to show that Veneroso's plea bargain had anything to do with appellant's case. In fact, appellant was not indicted until two years after David D'Apolito's representation of Veneroso concluded. There is nothing in the record to demonstrate that counsel had an actual conflict of interest that prevented him from effectively representing appellant. In fact, on one of the theft-in-office charges for which Veneroso was the key witness, appellant was acquitted. While appellant claims that anything his attorney learned during the prior representation with Veneroso would have to remain secret, appellant has not indicated that counsel possessed any such information, which would have been helpful to his case. There is nothing in the

record to suggest that David D'Apolito's prior representation of Veneroso required Lou D'Apolito to disregard his duties to appellant.

Appellant also claims that his counsel had a conflict of interest because Andy D'Apolito, counsel's uncle, was a former county building inspector who worked on appellant's rental properties along with Veneroso and Debonis. Appellant has demonstrated no actual conflict as a result of this connection. Further, appellant was acquitted of the theft-in-office charge for using Debonis and Veneroso to perform work on rental property he owned.

We next turn to appellant's claim that counsel was ineffective in his cross-examination of witnesses. Counsel is not ineffective unless his representation fell below an objective standard of reasonable representation, and the defendant was prejudiced by such representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, certiorari denied, 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768. To show prejudice, the defendant must show that had counsel not erred, there is a reasonable probability that the outcome of the trial would have been different. *Id.*

Appellant argues that counsel failed to adequately question John Gillespie regarding two statements given to the police. Appellant argues that initially Gillespie gave a statement that failed to mention appellant but later gave a statement that implicated appellant.

At the new trial hearing, attorney D'Apolito testified that Gillespie did not give two statements. Initially, Gillespie spoke to an investigator, who took some contemporaneous notes. Gillespie later gave a complete written statement, in which appellant was implicated. The court found that the signed and notarized statement did not conflict with the notes of the earlier interview but merely added a paragraph in which appellant's name was mentioned. Appellant has not demonstrated that had counsel cross-examined Gillespie concerning his failure to mention appellant's name during the initial interview, he would have been acquitted. Appellant additionally argues that Gillespie felt pressured into making statements to the prosecutor. At best, the affidavit of Raymond Spisak claims that Gillespie felt threatened. There is nothing in the record to suggest that Gillespie's testimony was false or fabricated, or that cross-examination on this issue would have resulted in an acquittal.

Appellant also claims that counsel failed to use statements allegedly given by Janet Perry to the FBI, in which she stated that she purchased the fire extinguishers from ABC due to their price. During his examination of Perry, attorney D'Apolito elicited from her that she selected ABC because she had problems with another company. She stated that there were no other reasons

for the change in the fire extinguisher company. The appellant has not demonstrated prejudice from the failure to question further on the issue of price. Janet Perry's testimony did not harm his trial position, as she provided an adequate explanation for her selection of ABC Company to provide fire extinguishers.

Finally, appellant argues that counsel was ineffective for failing to request a jury instruction on the testimony of an accomplice. The trial court specifically found that Debonis and Veneroso were not accomplices, and therefore this claim had no merit. At the very least, an accomplice must be a person indicted for the crime of complicity. *State v. Wickline* (1990), 50 Ohio St.3d 114, 118, 552 N.E.2d 913, 918–919, certiorari denied, 498 U.S. 908, 111 S.Ct. 281, 112 L.Ed.2d 235. In the instant case, neither Veneroso nor Debonis was indicted for the crime of complicity. Counsel was not ineffective for failing to request a jury instruction on the use of accomplice testimony.

The court did not abuse its discretion in overruling appellant's motion for new trial.

The second assignment of error is overruled.

The judgment of the Mahoning County Common Pleas Court is affirmed.

*Judgment affirmed.*

GWIN, J., concurs.

GREY, J., concurs in part and dissents in part.

LAWRENCE GREY, J., retired, of the Fourth Appellate District; W. DON READER, J., retired, of the Fifth Appellate District; and W. SCOT GWIN, J., of the Fifth Appellate District, sitting by assignment.

LAWRENCE GREY, Judge, concurring in part and dissenting in part.

I concur in the majority opinion as to all of the assignments of error, but as to the Goshen Township count, I respectfully dissent. On that count, I would reverse the trial court and hold that the state failed to meet its burden of proof beyond a reasonable doubt. The only evidence on this charge consists of Lordi saying that he would like to bid on the fire extinguisher contract and the township clerk saying that she felt solicited.

The tenor and meaning of words are often determined by looking to the context. For example, the phrase, "I know where you live," could be thought of as being harmless or life threatening depending on the context in which it is said. The context, of course, is determined by the conduct of the speaker relative to what has been said. There is no evidence that Lordi bid on the contract, made

any attempt to get the contract, spoke to anyone in a decision-making position, or reduced Goshen Township's allocation or share of road repairs. The state's case is based on Spack's subjective impression of what transpired. It is not a matter of a comment being taken out of context but rather a comment being given meaning without any context at all.

Even though multiple counts may be tried jointly for trial efficiency, it must be remembered that each count must be treated separately and reviewed on appeal separately. If this count were the only charge, and if the transcript in this appeal consisted of the single paragraph of Spack's testimony, this court would reverse on the weight of the evidence in a heartbeat. With all the investigations, publicity, charges, and indictments now going on in Mahoning County, there has developed sort of a presumption of corruption which may skew one's thinking. This court should avoid that trap, to treat each charge separately, and to insist on evidence that overcomes the presumption of innocence and proof beyond a reasonable doubt. I do not see such proof here and therefore would reverse this count on the weight of the evidence.

To uphold this conviction one must make several inferences, one upon each other. One must infer that a request to bid in a contract, is a request for contract. One must infer that the request to bid made to a person who is not authorized to grant contracts was intended to be conveyed to the persons who are authorized. And then one must infer, without any proof, that road repair funds would be withheld although the decision on the repair funds was to be made in the near future while the decision on the fire extinguishers would not be made for another six months. One might make this string of inferences to reach some kind of a conclusion, but one could not say that such conclusion was true beyond a reasonable doubt. Therefore, I would reverse on that count.

Based on the foregoing, I respectfully dissent in part.