OPINION
Defendant-appellant, Christopher Sillett, appeals his conviction and sentencing in the Butler County Court of Common Pleas for one count of receiving stolen property. We affirm the trial court's decision.
Around April 7, 2000, Marilyn Helton reported that her home had been burglarized. The missing items included a stack of one dollar bills she kept in a kitchen drawer, and the contents of four drawers of her jewelry box. Appellant had previously been employed by Marilyn's husband, Johnny, in his collection business and lived with the Heltons from October through Thanksgiving of 1999. Johnny Helton testified that he fired appellant in mid-January 2000.
According to Renee Joiner, appellant's fiance, after appellant was fired, he told her that he wanted to "do a job" in reference to the Heltons. Joiner indicated that in early April 2000, appellant gave her a bag of jewelry he said had been in storage, and asked her to separate the items that were genuine from the costume jewelry. Joiner stated that appellant would not let her keep any of the jewelry, although she noticed him wearing one of the rings on several occasions. According to Joiner, appellant had her pawn some of the jewelry and she thought some of it had been sold to drug dealers appellant knew.
Joiner was suspicious of appellant's explanation that the jewelry had been in storage and asked the police if there was any way she could find out if a house had been burglarized. Joiner described the jewelry to a detective and gave permission for police to search the house she shared with appellant. Police recovered items that were identified as property of the Heltons.
Appellant was indicted for receiving stolen property. At trial, appellant testified and denied any knowledge of the jewelry. A jury found appellant guilty of receiving stolen property with a value of over $500. The trial court sentenced appellant to eleven months in prison and ordered him to pay a $2,500 fine, but suspended $1,500 of the fine.
Appellant now appeals his conviction and sentence, raising the following three assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN CONVICTING THE DEFENDANT OF RECEIVING STOLEN PROPERTY.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE PRISON TERMS.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN IMPOSING FINANCIAL SANCTIONS ON THE APPELLANT.
In his first assignment of error, appellant contends that the trial court erred by failing to give an instruction on accomplice liability as required by R.C. 2923.03(D). This provision states:
 If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution. It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
We begin by noting that the record does not contain any evidence that appellant requested the trial court to instruct the jury on this matter. Since there is no record of any specific objection to the jury instructions, appellant has waived all but plain error with respect to the instruction in question. Crim.R. 30(A); State v. Williford (1990),49 Ohio St.3d 247, 251.
Appellant claims that because Joiner was an alleged accomplice, the trial court was required to instruct the jury pursuant to R.C. 2923.03(D). However, this court has previously held that the above instruction is not required when the witness is not charged with complicity as a result of involvement with the defendant's criminal activities. State v. Royce
(Dec. 27, 1993), Madison App. Nos. CA92-09-023, CA92-09-024, CA92-09-025, CA92-09-026. Likewise, several other appellate courts have determined that the requirement that this instruction be given is not applicable unless the witness has been indicted. State v. Gillard (Mar. 3, 2000), Erie App. Nos. E-97-132, E-98-038; State v. Howard, Marion App. No. 9-99-12, 1999 Ohio 848; State v. Goodwin, Mahoning App. No. 99-CA-220, 2001-Ohio-3416; State v. Hinkle (Aug. 23, 1996), Portage App. No. 95-P-0069; State v. Lordi, 140 Ohio App.3d 561, 572, 2000-Ohio-2582, ¶ 41. The rationale behind these rulings is based on the Ohio Supreme Court's definition of an accomplice. In State v. Wickline
(1990), 50 Ohio St.3d 114, 118, the Court held that "at the very least, an accomplice must be a person indicted for the crime of complicity."
Appellant argues that the reasoning of cases relying on the Wickline
definition of accomplice is faulty because the Wickline court was addressing the definition of "accomplice" in the context of the former version of R.C. 2923.03(D). Previously, R.C. 2923.03(D) required that the testimony of accomplices be corroborated. State v. Evans (1992),63 Ohio St.3d 231, 240-41. The statute was amended to its current form on September 17, 1986, replacing the corroboration requirement with a requirement that a cautionary jury instruction be given when accomplice testimony is presented. Id. We find no reason to distinguish the Ohio Supreme Court's definition of "accomplice" in one instance from that in the present case. Both the former and the current statute deal with issues surrounding the reliability of accomplice testimony. A new definition of "accomplice" is not required simply because the legislature chose to replace the corroboration requirement with a cautionary instruction.
Appellant urges us to adopt a standard that considers whether a witness "could" have been indicted as an accomplice. However, we find this standard too broad. The purpose of the cautionary instruction requirement is to ensure that juries are informed that the testimony of an accomplice is inherently suspect because an accomplice is likely to have a motive to conceal the truth or otherwise falsely inculpate the defendant. State v. Santine (June 26, 1998), Ashtabula App. No. 97-A-0025. We recognize that there may be rare instances in which a person who may be an accomplice is not indicted for a crime, but has motivation to lie or conceal the truth in return for their testimony. For example, an accomplice may be offered immunity in exchange for testimony and never be indicted for the crime. In such cases, there is reason for the witness' testimony to be viewed with the same suspicion as that of an indicted accomplice. See id.
However, the case at bar presents neither scenario. Joiner was not indicted for complicity, nor was any evidence presented to show that she received any type of favorable treatment in exchange for testifying against appellant. The trial court was not required to give the cautionary instruction to the jury.
In addition, a review of the record reveals that appellant's counsel thoroughly cross-examined Joiner regarding issues reflecting on her credibility, including her relationship with appellant, her connection with the Heltons, her prior theft convictions, and her drug abuse. The trial court also instructed the jury on the issue of witness credibility, including an instruction regarding the interest of a witness. As part of this instruction, the court cautioned the jury that "if a witness has a personal, philosophical or financial interest in the outcome of a case, that fact can be considered in determining the weight to be given to that witness' testimony." Based on our review of the trial transcript, we cannot say that the outcome of the trial would have been different if the cautionary accomplice instruction had been given.
Appellant also argues that appellant's trial counsel was ineffective for failing to request the cautionary accomplice instruction. To decide whether appellant received ineffective assistance of counsel, we must apply the two-tier test of Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. First, appellant must show that counsel's actions were outside the wide range of professionally competent assistance. Second, appellant must show that he was prejudiced as a result of counsel's actions. Id. at 689, 104 S.Ct. at 2066. Prejudice will not be found unless appellant demonstrates there is a reasonable possibility that, if not for counsel's errors, the result of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, 143, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. A strong presumption exists that licensed attorneys are competent, and that the challenged action is the product of a sound trial strategy and falls within the wide range of professional assistance. Id. at 142.
Because we have already determined that an instruction on accomplice credibility was not required, appellant's trial counsel was not ineffective for failing to request such an instruction. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends that the trial court erred in imposing consecutive sentences. The trial court ordered appellant's sentence to be served consecutively with the sentence it imposed when it convicted appellant on other charges a few days prior. Appellant contends that the trial court failed to state any facts or reasons for imposing consecutive sentences.
Pursuant to R.C. 2929.14(E)(4), a trial court may impose consecutive terms of imprisonment if it makes three findings. First, the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. R.C. 2929.14(E)(4). Second, the consecutive terms must not be disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Id. Finally, the trial court must find that one of the factors listed in R.C. 2929.14(E)(4)(a) through (c) applies:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code or was under post-release control for a prior offense;
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct;
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
R.C. 2929.14(E)(4) does not required the trial court to recite the exact words of the statute in a talismanic ritual to impose consecutive sentences upon an offender. State v. Boshko (2000), 139 Ohio App.3d 827,839. However, the trial court must state sufficient supporting reasons for the imposition of such sentences. R.C. 2929.19(B)(2)(c); Boshko at 838.
At the sentencing hearing, the trial court stated that consecutive sentences were necessary to protect the public and punish the defendant, that it was not disproportionate to the defendant's conduct or danger posed, that the defendant's criminal history shows a need to protect the public, the harm caused was so great and unusual that a single term would not adequately reflect the seriousness of the offense. Appellant does not dispute that the trial court stated the necessary language to sentence him to consecutive sentences. Instead, he argues that the trial court did not state adequate reasons to support its determination.
However, a review of the sentencing hearing establishes that the trial court made sufficient findings to support the decision to impose consecutive sentences. The court began the sentencing hearing by stating that it had listened to the testimony, and felt comfortable with the facts and appellant's background. The court then discussed a previous prison term appellant had served. The court continued by discussing the seriousness and recidivism factors it considered, including the fact that appellant stole items out of the victims' house, that the items, including a wedding ring, meant a lot to the victims, and that appellant's relationship with the victims facilitated the offense. The court also stated that it considered appellant's lengthy record, including a previous prison sentence and the fact that appellant was sentenced by the same trial court two days ago on an unrelated offense. We find the trial court's decision to impose consecutive sentences is supported by the record and is not contrary to law. Appellant's second assignment of error is overruled.
In his third assignment of error, appellant contends that the trial court erred by imposing a financial sanction on him without considering his ability to pay a fine. As mentioned above, the trial court ordered appellant to pay a $2,500 fine, but suspended $1,500 of the fine.
R.C. 2929.18 permits the trial court to impose financial sanctions on felony offenders. R.C. 2929.18(A). Before it imposes a financial sanction, however, the trial court "shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C.2929.19(B)(6). There are no express factors that must be considered or specific findings that must be made. State v. Martin, 140 Ohio App.3d 326,338, 2000-Ohio-1942. The trial court is not required to hold a hearing in order to comply with R.C. 2929.19(B)(6), although it may choose to do so pursuant to R.C. 2929.18(E). All that R.C. 2929.19(B)(6) requires is that the trial court consider the offender's present and future ability to pay. Id. Even a finding that a defendant is indigent for the purpose of receiving appointed counsel does not prohibit the trial court from imposing a financial sanction. State v. Kelly (2001), 145 Ohio App.3d 277,283.
The trial court heard considerable evidence during trial from the defendant regarding his past employment and his ability to earn a living. Appellant testified that he was employed by Johnny Helton in 1997, but left to take a job in New Orleans with the largest collection company in the country. He described the job as "like Top Gun School, * * * they don't hire locally, they look for the people that are the best * * *." He left New Orleans in 1999, and came to work for Johnny Helton again because he wanted to return to the Middletown area. He testified that he earned commission checks and that the last one was $3,000. While employed with Helton, appellant also worked part-time at Ryan's Steak House as a server to make additional money. After he left Helton's employment the second time, appellant was immediately hired by another collection company in Mason. During sentencing, appellant's attorney asked the court to consider the fact that appellant was employed and has worked regularly.
Before addressing appellant's sentence, the trial court stated that it was comfortable with the facts of the case. Based on the facts presented at trial and the statement of appellant's counsel at the hearing, there was substantial evidence for the trial court to consider appellant's present and future ability to pay a fine. Therefore, appellant's third assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and VALEN, J., concur.