RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0310P (6th Cir.)
File Name: 04a0310p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

FRANK LORDI,
   *Petitioner-Appellant,*

  *v.*

TODD ISHEE, Warden,
   *Respondent-Appellee.*

No. 02-4273

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 01-01725—Donald C. Nugent, District Judge.

Argued: June 10, 2004

Decided and Filed: September 10, 2004

Before: SILER, MOORE, and BALDOCK, Circuit
Judges.[*]

_____

**COUNSEL**

**ARGUED:** Kort W. Gatterdam, KRAVITZ & KRAVITZ,
Columbus, Ohio, for Appellant. Stuart A. Cole, OFFICE OF

_____

[*] The Honorable Bobby R. Baldock, Circuit Judge of the United States
Court of Appeals for the Tenth Circuit, sitting by designation.

THE ATTORNEY GENERAL, CORRECTIONS
LITIGATION SECTION, Columbus, Ohio, for Appellee.
**ON BRIEF:** Kort W. Gatterdam, Max Kravitz, KRAVITZ
& KRAVITZ, Columbus, Ohio, for Appellant. Stuart A.
Cole, OFFICE OF THE ATTORNEY GENERAL,
CORRECTIONS LITIGATION SECTION, Columbus, Ohio,
for Appellee.

SILER, J., delivered the opinion of the court, in which
BALDOCK, J., joined. MOORE, J. (pp. 11-17), delivered a
separate opinion dissenting in part.

_____

**OPINION**

_____

SILER, Circuit Judge. Frank Lordi appeals the district
court's denial of his petition for a writ of habeas corpus from
his convictions in state court under 28 U.S.C. § 2254. In the
district court, Lordi claimed various constitutional
deficiencies in his convictions. However, this court granted
Lordi a certificate of appealability solely on the issues of
whether his trial counsel was constitutionally ineffective due
to a conflict of interest, and whether Lordi was
constitutionally deprived of an impartial jury due to the trial
court's decision not to investigate an allegation of a juror's
bias. For the reasons stated hereafter, the district court is
**AFFIRMED.**

### BACKGROUND

In April 1998, Lordi was indicted on eighteen criminal
counts, variously stemming from his position as a county
commissioner in Mahoning County, Ohio. Lordi hired
attorney Lou D'Apolito (D'Apolito) to defend against the
charges. D'Apolito's law partner, David D'Apolito, had
previously represented one of the government's material
witnesses against Lordi, Joseph Veneroso. This

representation had been in a previous unrelated criminal case involving a felony charge of bribery. Veneroso had worked in the county's building inspection office and had offered to pay his supervisor $6,000 for the answers to a required certification test. In 1996, in exchange for Veneroso's guilty plea, the charge was reduced to a misdemeanor of falsification. At Lordi's trial, the government intended to have Veneroso testify in regard to how Lordi would direct Veneroso to engage in personal (e.g., maintenance on Lordi's rental houses) and political (e.g., gathering petitions) chores while he was being paid by the county.

D'Apolito initially questioned his ability to defend Lordi due to his partner's prior representation of Veneroso, and informed Lordi that he had a potential conflict of interest. However, after conducting some research into the conflict issue, D'Apolito concluded that he would be able to defend Lordi. D'Apolito shared this research and his conclusion with both the original prosecutor and the replacement prosecutor, who initially warned D'Apolito that he thought it was necessary to seek his removal from the case due to the potential conflict until D'Apolito shared his research with him. Off the record before trial, D'Apolito and the prosecutor, without Lordi present, brought the prior representation of Veneroso to the attention of the trial court, which was dismissive of the entire issue. The parties and court intended to put the issue on the record when a court reporter was available, but never did.

During cross-examination of Veneroso at trial, D'Apolito brought out Veneroso's conviction for falsification, but otherwise did not go into any details of the offense. The cross-examination was relatively friendly with D'Apolito accepting several re-characterizations of his questions by Veneroso. Ultimately, on February 24, 1999, Lordi was convicted on four counts, including theft in office (O.R.C. § 2921.42(A)(2)), unlawful interest in a public contract (O.R.C. § 2921.42(A)(1)), and two misdemeanor counts of having a conflict of interest (O.R.C. § 102.03(E)). All the

counts on which Lordi was convicted either did not rely on Veneroso's testimony, or had other witnesses who corroborated Veneroso's testimony.

Additionally, after jury selection but before trial, D'Apolito received an anonymous telephone call from a female who claimed to have been a member of the venire. The caller alleged that she overheard an impaneled juror make the statement "that guy is guilty" while looking over at Lordi. The caller refused to identify herself, but claimed that another member of the venire, whom she named, had also overheard the comment as they had discussed it between themselves. D'Apolito brought this to the immediate attention of the trial court and requested that the court inquire into the truth or falsity of the allegation. The state opposed this inquiry on the basis that there was no indicia of reliability as to the accusation and it had the potential of tilting the accused juror into a pro-defense mode to compensate against the accusation that he was biased against Lordi. The trial court refused to conduct additional inquiry, citing the fact that the call was anonymous and that the court had no reason to suspect that anyone sitting in the venire would have heard it. Additionally, the court speculated that the comment could have been made in jest, and agreed with the prosecution that an inquiry would potentially tilt the juror into a pro-defense mode.

On May 26, 1999, Lordi filed a motion for a new trial on the basis of newly discovered evidence, citing his "discovery" of a conflict of interest in his trial counsel. After an evidentiary hearing, the motion was denied. The appeal of the motion's denial and Lordi's direct appeal were consolidated by the Ohio Court of Appeals, which affirmed the denial and Lordi's conviction in 2000. The Ohio appellate court ruled as to the conflict issue that "[t]here [was] nothing in the record to demonstrate that [Lordi's] counsel had an actual conflict of interest which prevented him from effectively representing" Lordi. *Ohio v. Lordi*, 748 N.E.2d 566, 573 (Ohio Ct. App. 2000). On May 23, 2001, the Ohio

Supreme Court denied Lordi leave to appeal. A subsequent motion for reconsideration was denied. While pursuing the appeal to the Ohio Supreme Court, Lordi filed other applications for relief in the Ohio courts, which were variously denied and for which he was ultimately denied leave to appeal by the Ohio Supreme Court on May 23, 2001.

On January 4, 2001, Lordi filed a motion to reopen his appeal with the Court of Appeals, alleging various claims that his appellate counsel was ineffective, including the failure of his appellant counsel to raise the issue of the trial court's failure to inquire into the juror bias issue. In February 2001, the motion was denied with the appellate court ruling in regard to the juror misconduct issue that "[t]he only evidence of such misconduct before the court was an anonymous call. As the record does not support a claim of juror misconduct other than this anonymous phone call, appellant has not demonstrated a reasonable likelihood that had appellate counsel raised this assignment of error, it would have been sustained." Lordi appealed this decision to the Ohio Supreme Court, which also denied this claim in its consolidated denial of Lordi's petition on May 23, 2001.

On July 17, 2001, Lordi filed for a writ of habeas corpus under 28 U.S.C. § 2254 in federal district court. The district court dismissed the petition and denied a certificate of appealability (COA). This court later granted a certificate of appealability on two issues: first, whether Lordi received constitutionally ineffective assistance of counsel due to a conflict of interest by his trial counsel; and second, whether he was denied his Sixth Amendment right to an impartial jury.

## ANALYSIS

### *Standard of Review.*

A district court's denial of a habeas corpus writ is reviewed de novo. *Gonzales v. Elo*, 233 F.3d 348, 352 (6th Cir. 2000). Because Lordi's convictions occurred in 1999, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under AEDPA, factual findings made by a state court are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). For Lordi to receive relief, this court must find that the Ohio court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). Lordi has not raised issues in regard to the factual determinations of the Ohio courts, but focuses his arguments upon whether the Ohio courts made a determination that was contrary to federal law, or was an unreasonable application of that law.

**A. Conflict of Interest.** Lordi's conflict of interest claim relates to a successive (previous unrelated representation of a co-defendant and/or trial witness) rather than a joint (simultaneous trial of co-defendants) or a multiple (co-defendants at severed trials) representation. The presumed prejudice standard for ineffectiveness claims based on a conflict of interest detailed in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), is inapplicable to cases of successive representations. *See McFarland v. Yukins*, 356 F.3d 688, 701(6th Cir. 2004); *Moss v. Kohn*, 323 F.3d 445, 460-61 (6th Cir. 2003). Therefore, Lordi's argument that the Ohio courts acted contrary to federal law by dismissing the ineffectiveness claim due to his failure to demonstrate any prejudice is not correct. *Strickland v. Washington*, 466 U.S. 668, 692 (1984), is the controlling authority for an ineffectiveness claim based

on a conflict of interest for a successive representation, which was the legal standard the Ohio courts identified.

Not only did the Ohio courts identify the appropriate standard, but they did not make an unreasonable application of the ineffectiveness rule from *Strickland*. After holding an evidentiary hearing, the Ohio courts found that "[t]here was nothing in the record to suggest that David D'Apolito's prior representation of Veneroso required Lou D'Apolito to disregard his duties to [Lordi]." More specifically, this record does not show that either Lou or David D'Apolito was in possession of any confidential information that may have implicated a conflict. Lordi's case before this court is based upon pure speculation that D'Apolito may have known something by implication from his law partner which may have influenced his decision-making at trial, although he can point to no evidence that a conflict existed or that any decision was influenced. The only pertinent facts that Lordi has presented to the courts are that D'Apolito's law firm represented a government witness in a prior unrelated matter and then cross-examined that witness at trial. Without more, this presents a case of a potential conflict of interest due to a successive representation that never ripened into an actual conflict. As such, the Ohio courts were not in error when they ruled on this constitutional issue.

**B. Juror Bias.** Lordi claims that he was deprived of an impartial jury in violation of the Sixth Amendment due to the trial court's refusal to inquire into a statement by a juror which potentially demonstrated a pre-conceived notion of Lordi's guilt. The district court found this claim to have been procedurally defaulted. The COA that was issued is addressed to the merits of the juror bias claim rather than the procedural default issue, which Lordi also raised in the district court in the guise of an ineffectiveness of appellate counsel claim. Although it is a statutory requirement that a COA reference the specific issue to be addressed on its face, 28 U.S.C. § 2253(c)(3), a procedural issue that possibly bars addressing an underlying constitutional claim is an

appropriate matter to be addressed under a COA. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For procedural default to occur, the state must show that 1) Lordi failed to comply with a state procedural rule; 2) the state courts actually enforced the state procedural rule; 3) the state procedural bar must be an adequate and independent state ground to foreclose federal review; and 4) Lordi must not have cause and actual prejudice to excuse his default. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Lordi's own habeas petition concedes that his appellate counsel did not properly raise the juror bias issue on direct appeal. He is therefore barred from raising it in the Ohio courts because he had the previous opportunity to present it during his direct appeal, and failed to do so, thus waiving the issue under state procedural law, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), which is an adequate and independent state ground. *Id.* at 161. Furthermore, since Lordi is required to present this claim to the Ohio courts first to satisfy the exhaustion requirement, but is now effectively barred from doing so due to Ohio's procedural rule, the second requirement that the state courts actually enforced the procedural rule is fulfilled. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

Lordi attempts to avoid procedural default by characterizing the Ohio appellate court's disposition of his post-conviction ineffectiveness claim on the prejudice prong as being a ruling on the merits of the juror bias issue, which would permit this court to review it. This is not correct. By addressing the prejudice of an ineffectiveness claim a court does not bind itself into ruling on the claim's underlying merits. *See Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001). Therefore, to reach the underlying issue of juror bias, Lordi must first establish an equivalent constitutional deprivation that excuses his default by the ineffective assistance of his appellate defense counsel. *See Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000). However, this issue cannot be addressed in a vacuum since Ohio's courts have already rendered a ruling on the merits of

the ineffective assistance of counsel claim upon which Lordi is relying to excuse his procedural default.

Therefore, based on the standard of review from the AEDPA, this claim is procedurally defaulted. The Ohio appellate court that addressed the issue concluded that since the only evidence presented to the trial judge was an anonymous phone allegation, Lordi could not demonstrate a "reasonable likelihood" that he would have received relief had his appellate counsel raised the issue. Furthermore, the allegation related to a statement by a juror that, standing alone, only indicated the possibility of a pre-conceived notion of guilt. The Supreme Court has stated that the idea "that the mere existence of [a] preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961) (internal citations omitted).

Since the federal constitutional standard for the prejudice necessary to demonstrate the ineffectiveness of counsel, and thus to excuse a procedural default, is "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," where "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694, the Ohio appellate court identified the correct legal standard. As for the Ohio court's decision being an unreasonable application of this legal standard, the Supreme Court has found it necessary within the past year to reiterate that when a state court's application of governing federal law is challenged in a habeas petition, the decision must not only be shown to be erroneous, but objectively **unreasonable**. *See Middleton v. McNeil*, 124 S. Ct. 1830 (2004); *Yarborough v. Gentry*, 540 U.S. 1 (2003) (*per curiam* opinions reversing appellate court panels which granted habeas corpus writs due to findings that state courts made unreasonable applications of federal ineffective assistance of counsel law). We do not find that the Ohio

court's determination of this ineffectiveness of counsel claim was unreasonable. "Without more" than the *possibility* of a preconceived notion of guilt, our confidence in the outcome has not been undermined.

**AFFIRMED.**

---
### DISSENTING IN PART
---

MOORE, Circuit Judge, dissenting in part.  Because I believe that Lordi has demonstrated cause and prejudice to excuse the procedural default on his juror-bias claim, I respectfully dissent from the corresponding portion of the majority's opinion.

### I.

After jury selection, defense counsel Lou D'Apolito received a telephone call from an anonymous woman claiming to be on the jury venire.  The woman said that she and another female venire member, whom she identified, overheard a male colleague who was later seated on the jury ("Juror A") comment before the trial began that Lordi "was guilty."  She also expressed concerns that Juror A had lied during voir dire, and stated that she felt compelled to report the matter.

D'Apolito requested that the trial court conduct an in-camera hearing to examine Juror A for bias.  The prosecution opposed the request, arguing that the accusation was not credible and could potentially taint the jury pool.  Denying the request without a hearing, the trial court (1) noted that the call was anonymous; (2) suggested that the anonymous venire member would not have been within hearing range of Juror A when the alleged comment was made; and (3) speculated that Juror A's comment may have been in jest.  D'Apolito entered his objection to the denial.

Appellate counsel failed to raise a juror-bias claim on direct appeal.  Lordi first presented the claim in his delayed motion for reconsideration before the Ohio Court of Appeals, seeking to excuse his procedural default due to ineffective assistance of appellate counsel.[1]  Noting the scant evidence in the record of juror bias, the state appellate court denied the claim, holding that Lordi "has not demonstrated a reasonable likelihood that had appellate counsel raised this assignment of error [on direct appeal], it would have been sustained." *Ohio v. Lordi*, Nos. 99CA62; 99CA247, slip op. at 1 (Ohio Ct. App. Feb. 23, 2001), *appeal dismissed*, 747 N.E.2d 251 (Ohio 2001).

### II.

To excuse the procedural default, Lordi contends that his counsel on direct appeal was constitutionally ineffective for failing to raise the juror-bias claim. *See, e.g.*, *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000) ("If [petitioner] could show that she received ineffective assistance of appellate counsel that rose to the level of a violation of her Sixth Amendment rights, it would excuse her procedural default.").  The applicable standard, enunciated in *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984), requires a showing that (1) counsel's performance was so deficient as to be "outside the wide range of professionally competent assistance"; and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  The failure of appellate counsel "to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Because of the procedural arguments in this case, we must first decide whether there was a reasonable probability that the claim of juror bias would have prevailed on its merits at

---

[1]Ohio law requires defendants to raise a claim of  ineffective assistance of appellate counsel on an application for reconsideration in the court of appeals or on direct appeal to the state supreme court. *See State v. Murnahan*, 584 N.E.2d 1204, 1208 (Ohio 1992); Ohio App. R. 26(B).

the time Lordi's appellate counsel failed to raise it. *Id.* If so, "we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel that would excuse [Lordi's] procedural default." *Id.* at 700.

## A.

"Under clearly established Supreme Court precedent, a defendant who alleges implied juror bias is entitled to a hearing in which he has 'the opportunity to prove actual bias.'" *Mason v. Mitchell*, 320 F.3d 604, 636 (6th Cir. 2003) (quoting *Smith v. Phillips*, 455 U.S. 209, 215 (1982)). "A hearing permits counsel to probe the juror's memory, his reasons for acting as he did, and his understanding of the consequences of his actions." *Phillips*, 455 U.S. at 222 (O'Connor, J., concurring).

The Supreme Court has not dictated the type or breadth of opportunity that state trial courts must provide under *Phillips* to defendants raising allegations of juror bias. However, we have granted habeas relief where a state trial court categorically refused a defendant's request for any post-conviction hearing on the claim. *See, e.g., Nevers v. Killinger*, 169 F.3d 352, 373-74 (6th Cir.), *cert. denied*, 527 U.S. 1004 (1999). In *Nevers*, the defendant appended several jurors' affidavits to his motion for a new trial, stating that jurors were exposed to extraneous and potentially prejudicial information. We concluded that the trial court's denial of the defendant's request for a hearing and factual determination on the claim "prevented [him] from demonstrating with specificity that the extraneous information the jury possessed did in fact impair the ability of the jury to decide the case solely on the evidence properly presented to them"—a violation of the defendant's right to an impartial jury under the Sixth and Fourteenth Amendments. *Id.* at 374.

The Seventh Circuit recently reached a similar conclusion when juror bias allegations first arose at the start of trial in

*Oswald v. Bertrand*, 374 F.3d 475 (7th Cir. 2004). Despite considerable publicity of the murder in the small Wisconsin community, evidence that jurors were discussing the case before trial, and suggestions that at least one juror was willing to convict in order to expedite deliberations, the state trial court refused defendant's request to investigate juror bias and simply readmonished the jury. *Id.* at 479-80. Granting habeas relief, the Seventh Circuit held that a state trial court's inquiry into juror-bias allegations must be "reasonably calculated to resolve the doubts raised about the juror's impartiality" (internal quotation omitted), and should be increasingly more searching as the probability of bias increases. *Id.* at 480-81. The pretrial atmosphere and reported jury conduct "created a sufficiently high probability of jury bias to require on the part of the trial judge a diligent inquiry" to ensure the protection of the defendant's Sixth Amendment rights. *Id.* at 481.

While it is unnecessary for us to define the precise nature of the hearing required to be afforded to defendants raising juror-bias claims, the anonymous venire member's allegations were clearly sufficient to warrant some "diligent inquiry" by the trial court. *Oswald*, 374 F.3d at 481. First, the anonymous venire member levied a troubling allegation that Juror A lied during voir dire and that Juror A expressed his belief in Lordi's guilt. Second, she provided the name of a second woman on the venire who could substantiate her allegations, triggering a concern among reasonable jurists that Juror A's comments may have influenced other members of the jury pool. Third, the indictment and trial of a Mahoning County commissioner would naturally generate local publicity, placing the trial judge on notice about the potentiality for such prejudice.

The state trial court's response was constitutionally inadequate to protect Lordi's Sixth Amendment rights. No factual support is cited for its conclusions that (1) the allegation was not credible due to the source's anonymity; (2) the anonymous venire member could not have overheard

Juror A's comments; and (3) Juror A probably offered his comments in jest. These are just speculations of the state trial court. The state trial court further failed to recognize that the credibility of the allegation could be quickly ascertained by questioning the second venire member identified by the caller, and without necessarily interrogating—and potentially tainting—Juror A.

In light of the unambiguous command of the Supreme Court in *Phillips*, I believe it reasonably probable that a reviewing court on direct appeal, after recognizing the trial court's categorical failure to permit Lordi an opportunity to demonstrate the presence of actual juror bias, would have reversed the case and ordered relief. The Ohio Court of Appeals' contrary conclusion rested on an "unreasonable application" of *Strickland* because it incorrectly limited its prejudice inquiry to the merits of Lordi's juror-bias allegation. It found that even if a juror-bias claim had been offered on direct appeal, there was not "a reasonable likelihood that . . . it would have been sustained" because the claim was unsupported by evidence in the record. *Lordi*, slip op. at 1.[2] Of course, the reason for this lack of support can be attributed to the state trial judge's complete abrogation of his

---

[2]The full analysis of the Ohio Court of Appeals is as follows:

> Appellant first alleges that counsel should have raised the issue of the court's failure to conduct an inquiry into an allegation of juror misconduct. The only evidence of such misconduct before the court was an anonymous call. As the record does not support a claim of juror misconduct other than this anonymous call, appellant has not demonstrated a reasonable likelihood that had appellate counsel raised this assignment of error, it would have been sustained.

*Lordi*, slip op. at 1. While the opinion failed to cite to *Strickland* or conduct a meaningful constitutional analysis, our inquiry still proceeds under the deferential lens of 28 U.S.C. § 2254(d) because the state appellate court included some language that vaguely mirrors *Strickland*'s prejudice prong.

constitutional duty to permit further inquiry or a hearing to develop the evidence. Hence, by omitting any mention of the trial court's inexplicable failure to conduct a hearing, the state appellate court did not consider the reasonable probability of reversal on direct appeal due to procedural error, and thus conducted an incomplete and unreasonable application of *Strickland*'s prejudice prong. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *see also McFarland*, 356 F.3d at 699; *Lattimore v. Dubois*, 311 F.3d 46, 56 (1st Cir. 2002), *cert. denied*, 538 U.S. 966 (2003).

**B.**

Not only did the Ohio Court of Appeals unreasonably apply *Strickland*'s prejudice prong, but also that court failed to analyze *Strickland*'s deficient-performance prong. Consequently, our analysis of whether appellate counsel's omission of Lordi's juror-bias claim on direct appeal rises to the level of deficient performance under *Strickland* is conducted de novo. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *see also Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003).

Lordi's juror-bias claim was so "significant and obvious" that appellate counsel's failure to raise it constitutes a deficiency under *Strickland*. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir.), *cert. denied*, 528 U.S. 946 (1999). As noted above, the Supreme Court, without qualification, "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Phillips*, 455 U.S. at 215. It naturally follows that the juror-bias issue was clearly stronger than the issues presented on direct appeal, mainly the forty-four alleged instances of prosecutorial misconduct—many of which were utterly frivolous or unsupported by the record. *Robbins*, 528 U.S. at 288 (requiring a habeas petitioner claiming ineffective assistance of counsel to demonstrate that "a particular nonfrivolous issue was clearly stronger than issues that counsel did present"). Moreover, D'Apolito's prompt

objection to the trial court's refusal to conduct any inquiry into juror bias should have alerted appellate counsel of this claim, the Supreme Court's decisive language in *Phillips* forecloses any discretion of trial courts on whether or not to conduct an investigation into allegations of juror bias, and the record is totally devoid of any explanation of why appellate counsel would strategically fail to include the juror-bias claim. *Mapes*, 171 F.3d at 427.

Under these circumstances, the deficient-performance prong of *Strickland* has been satisfied. Given the clear Sixth Amendment violation, the decision of Lordi's appellate counsel to omit this issue on direct appeal was "an unreasonable one which only an incompetent attorney would adopt" and is appropriately cited as the cause for Lordi's failure to raise the issue on appeal. *Id.* at 428.

### III.

Because the Ohio Court of Appeals unreasonably applied clearly established Supreme Court precedent when it held in effect that Lordi could not satisfy the prejudice prong of *Strickland* and because Lordi has shown deficient performance of appellate counsel, Lordi has overcome the procedural default. Because *Phillips* mandates that Lordi be provided with some meaningful opportunity to demonstrate actual juror bias after his allegations were presented to the state trial court, I would further hold that the state trial judge's failure to conduct *any inquiry* clearly violated Lordi's Sixth Amendment rights. Therefore, I would reverse the district court's decision to deny habeas relief, and I would remand with instructions to grant the writ unless the State of Ohio opts to retry Lordi within a reasonable period of time. I respectfully dissent.