RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0395P (6th Cir.)
File Name:  00a0395p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ESTEVAN GONZALES,
     *Petitioner-Appellant*,

     *v.*

FRANK ELO, Warden,
     *Respondent-Appellee.*

No. 98-1987

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 95-40187—Paul V. Gadola, District Judge.

Argued:  October 25, 2000

Decided and Filed:  November 20, 2000

Before:  DAUGHTREY and CLAY, Circuit Judges;
RUSSELL, District Judge.[*]

———————————

## COUNSEL

**ARGUED:**  Robyn B. Frankel, Bloomfield Hills, Michigan,
for Appellant.   Olga Agnello, OFFICE OF THE
PROSECUTING ATTORNEY, COUNTY OF WAYNE,

_____

[*]The Honorable Thomas B. Russell, United States District Judge for
the Western District of Kentucky, sitting by designation.

Detroit, Michigan, for Appellee.  **ON BRIEF:**  Robyn B. Frankel, Bloomfield Hills, Michigan, for Appellant.  Olga Agnello, OFFICE OF THE PROSECUTING ATTORNEY, COUNTY OF WAYNE, Detroit, Michigan, for Appellee.

———————————

## OPINION

———————————

CLAY, Circuit Judge.   Petitioner, Estevan Gonzales, appeals from the district court's order denying his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Specifically, on appeal, Petitioner contends that the district court erred in denying his application for a writ of habeas corpus because he was denied his Sixth Amendment right to the effective assistance of trial counsel.  For the reasons set forth below, we **AFFIRM** the district court's order.

### BACKGROUND
### Procedural History

Petitioner, a Michigan prisoner, was convicted of second-degree murder in violation of Mich. Comp. Laws Ann. § 750.317 on April 5, 1984, following a bench trial in the Detroit Recorders Court, in connection with the beating death of Chris Tuggle.  Petitioner was sentenced to a term of twelve to thirty years of imprisonment, and thereafter filed an appeal as of right in the Michigan Court of Appeals claiming that his conviction was not supported by sufficient evidence.  The Michigan Court of Appeals affirmed Petitioner's conviction on January 10, 1986, and Petitioner did not seek leave to appeal to the Michigan Supreme Court.

Thereafter, in January of 1990, Petitioner filed a Motion for Relief from Judgment pursuant to Michigan Court Rule 6.500, claiming that the prosecution relied upon perjured testimony in securing Petitioner's conviction, and that trial counsel was ineffective in advising Petitioner regarding his constitutional right to testify.   The trial court denied Petitioner's motion, and Petitioner filed a delayed application

We are not persuaded by Petitioner's reliance upon *Brown v. Artuz*, 124 F.3d 73 (2d Cir. 1997). There, although the Second Circuit found that the defense attorney had not properly advised the defendant of his right to testify, the court ultimately found that the defendant was not denied the effective assistance of counsel because he was not prejudiced by the attorney's mistake. *Id.* at 80-81. Petitioner fails to consider the Second Circuit's ultimate holding in *Brown*, and instead simply focuses on the court's conclusion that the defense attorney's performance fell below a reasonable standard of performance. Petitioner's selective reliance is not surprising because if he considered the *Brown* decision as a whole, it would cut against him. Indeed, as in *Brown*, Petitioner has failed to show that he was actually prejudiced by his failure to testify. The record indicates that several witnesses corroborated the government's version of the events on the night in question, and in a case where Petitioner is claiming that his testimony would have been that Perez – one of the government's witnesses – was not telling the truth, Petitioner has not shown actual prejudice. *See Farley v. United States,* No. 97-4400, 1999 WL 645924, at \*\*2 (6th Cir. Aug. 13, 1999) (unpublished order) (finding that the petitioner had not shown actual prejudice by his attorney's failure to properly advise him about his right to testify, where several witnesses corroborated the government's version of the events).

## CONCLUSION

In summary, although Petitioner did not procedurally default on his ineffective assistance of counsel claim, we hold that the district court properly dismissed Petitioner's application for a writ of habeas corpus where Petitioner has failed to show that he was denied his Sixth Amendment right to the effective assistance of counsel. We therefore **AFFIRM** the district court's order.

for leave to appeal to the Michigan Court of Appeals, which was denied. Petitioner then filed an application for leave to appeal to the Michigan Supreme Court and, on October 29, 1991, the Michigan Supreme Court denied the requested leave; however, the court remanded the case to the court of appeals for consideration "as on leave granted."

On November 12, 1993, the court of appeals once again affirmed Petitioner's convictions, and ruled that the claim of perjury was merely a renewed challenge to the prosecution witness' credibility which was therefore meritless. The court of appeals also ruled that Petitioner had waived review of his claim for ineffective assistance of counsel inasmuch as Petitioner had failed to raise the claim on direct appeal. However, the court added that because Petitioner was aware of his right to testify and because his attorney had advised Petitioner against testifying as a matter of trial strategy, Petitioner's claim was meritless in any event. Petitioner filed an application for leave to appeal the court of appeals decision to the state supreme court; the supreme court thereafter denied leave, noting that Petitioner could not satisfy the cause and prejudice prerequisite of Michigan Court Rule 6.508(D).

Petitioner then sought habeas relief in the United States District Court for the Eastern District of Michigan on June 21, 1995, pursuant to 28 U.S.C. § 2254. On April 8, 1997, Magistrate Judge Donald A. Scheer issued a report and recommendation in which he recommended that an evidentiary hearing be held as to Petitioner's claim involving ineffective assistance of counsel. The district court adopted the magistrate's recommendation, and Magistrate Scheer presided over the evidentiary hearing on February 19, 1998.

The magistrate thereafter issued a report and recommendation, wherein he recommended that the petition for a writ of habeas corpus be denied. The magistrate concluded that Petitioner's trial counsel was not ineffective, and that his counsel properly advised Petitioner of his constitutional right to testify in his own behalf. On July 21,

1998, District Judge Paul V. Gadola adopted the magistrate's report and recommendation, and denied Petitioner's application for the writ.

The district court declined to issue a certificate of appealability; however, on March 17, 1999, this Court granted Petitioner a certificate of appealability, and this appeal ensued.

## Facts

Jonathon Paulk, who was fifteen years old at the time of Petitioner's trial, testified that he lived directly across the street from the victim, Chris Tuggle, in the City of Detroit. On September 6, 1983, at about 11:00 p.m., Paulk observed Tuggle as Tuggle removed the speakers from the trunk of his vehicle. Paulk noted that Tuggle's vehicle was parked on the same side of the street on which Tuggle lived, and that the distance from the upstairs window of the house where Paulk was positioned to where Tuggle's car was parked was about twenty to thirty feet. Paulk stated that Petitioner, whom Paulk referred to as "Chinaman," was standing next to the car as Tuggle removed the speakers from the trunk. Paulk also stated that once Tuggle removed the speakers from his trunk, Tuggle went into his house while Petitioner remained outside next to the car.

Paulk testified that he then observed a man that he called "Buddy" (later identified as Jesse Perez), walking down the street with another young man and two girls. Paulk observed Buddy and his companions walk past Petitioner to the corner of the street; Buddy then returned to where Petitioner was standing. By this time Tuggle had joined Petitioner back by the car; the three men then got into the vehicle and drove away. According to Paulk, Tuggle was driving, Petitioner was in the passenger's seat, and Buddy was in the back seat. The only conversation that Paulk heard between the men was when Petitioner ordered Buddy to "get in the back asshole." Tuggle, Petitioner, and Buddy then drove away, and Paulk did not see any of the men again; however, Paulk testified that he

In light of this Court's pronouncement in *Webber*, Petitioner's claim is without merit. As found in *Webber,* "when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed." 208 F.3d at 551. Here, defense counsel Hildago testified at the evidentiary hearing that he made a tactical decision to advise Petitioner not to take the stand because Petitioner did not appear credible. Petitioner testified that defense counsel advised him not to testify as a strategic move because of Perez's testimony, as well as because of Petitioner's appearance. According to Petitioner, defense counsel told him that he "looked too mean" to testify, particularly when compared to Perez. Whatever the reason given, the parties agree that defense counsel's decision to advise Petitioner not to testify was a tactical one based on trial strategy. As such, Petitioner's assent is presumed as is the effectiveness of Petitioner's counsel, barring any indication by Petitioner at trial that he disagreed with his counsel. *See id.*

The record is void of any such indication by Petitioner. Indeed, as the magistrate noted, Petitioner did not raise this claim until nearly six years after his conviction, and after his appeal as of right was rejected, (J.A. at 244 n.1), let alone voice any such concern at trial. Furthermore, based upon the testimony elicited at the hearing on this issue, Petitioner has not overcome the presumption that he willingly agreed with his counsel's advice not to testify and that his counsel rendered effective assistance. The magistrate credited the testimony of defense counsel when counsel stated that it was his customary practice to advise his clients of their Fifth Amendment rights, even though counsel could not specifically remember the advice that he gave to Petitioner. The magistrate discredited what he found to be Petitioner's selective memory of the advice provided by defense counsel. Because this court does not disturb issues of credibility, the magistrate (and therefore the district court) did not clearly err in making his findings, and that Petitioner's argument thus fails.

testify." *See* 208 F.3d at 550. In discussing the first issue, this Court opined that,

> Although the ultimate decision whether to testify rests with the defendant, *when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. [United States v.] Joelson, 7 F.3d [174,] at 177 [(9th Cir. 1993)]. This is so because the defendant's attorney is presumed to follow the rules of professional conduct and is "strongly presumed to have rendered adequate assistance" in carrying out the general duty "to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution."* Strickland v. Washington, 466 U.S. 668, 688-90 (1984). Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record. *Joelson*, 7 F.3d at 177. . . .
>
> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. *Joelson*, 7 F.3d at 177. At base, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. *Pelzer* [*v. United States,* No. 96-1195,] 1997 WL 12125 at*2 [(6th Cir. Jan. 13, 1997)]. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred by the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Joelson*, 7 F.3d at 177.

*Id.* at 551 (footnote omitted; emphasis added).

saw Tuggle's car on fire close to midnight in the church parking lot behind Paulk's house.

Jesse Perez (a/k/a "Buddy") also testified at trial. Perez stated that on the day in question, Petitioner (a/k/a "Chinaman") arrived at Perez's mother's home at about 6:00 p.m., and the two walked up to a local bar where they spent several hours drinking beer; they left and went to another bar for just a moment; and then left. The two walked toward Perez's mother's house, but Petitioner split from Perez while Perez returned home and sat on the back porch because he was not feeling well. Perez stated that about twenty minutes later, Petitioner returned driving a dark colored car. He told Perez to get into the car and to go with him; Perez declined because he was not feeling well; however, Petitioner insisted, so Perez got into the passenger seat of the vehicle and left with Petitioner.

Perez testified that Petitioner was headed to Toledo, Ohio, but stopped in Ecorse, Michigan, at the home of Perez's girlfriend, Susan Victor, who lived with her aunt, Bonny Lou Milanovich. The two men went inside and Petitioner told Perez in Spanish that he was going to kill someone that night and that he wanted Perez to go with him. Perez stated that he told Petitioner that he did not want to go with him, but that he ultimately agreed to go with Petitioner. The two men left Victor's house, got into the car, and drove away with Petitioner behind the wheel. Perez testified that it was about 11:30 p.m. by this time, and that Petitioner drove to the end of Westfield road and then stopped the car.

After Petitioner stopped the car, he popped the trunk, and Perez observed a young Caucasian man get out of the trunk. Petitioner got out of the car, but Perez remained inside. Perez claimed that from his position inside the car, he observed Petitioner and the young man arguing; Petitioner was pushing the man; and the man was pleading with Petitioner not to hurt him. Petitioner grabbed a tire jack from the trunk of the car and hit the man in the upper part of his body several times. The man fell to the ground; Petitioner got back into the car;

and he then drove off with Perez, leaving the man's beaten body behind. When Petitioner got back into the car he warned Perez not to tell anyone what he observed or Petitioner would kill him.

The two proceeded back to Victor's home; Perez asked Victor to spend the night with him; she agreed, and left with Petitioner and Perez. The men dropped Victor off at Perez's mother's house. After the men dropped off Victor, they proceeded down an alley and then Petitioner made Perez get out of the car, allegedly because Perez was making him nervous. Several days later, Perez left for Toledo, Ohio; while there, he ran into his sister Rosie who was with a friend. Perez stated that Rosie informed him that the police were looking for a young boy back in Detroit. Perez told Rosie that he was going to flee the state and head to Indiana, but then decided to return to Detroit on October 6, 1983 with Rosie and her friend. Upon arriving in Detroit, Perez contacted the homicide unit of the Detroit Police Department by telephone, and told Lieutenant Deane about the events that he observed on the evening of September 6, involving Petitioner and Tuggle. Thereafter, the Detroit Police picked up Perez at an agreed location, and Perez then directed the police to the location where Perez observed Petitioner beat Tuggle and abandon Tuggle's body. The police recovered Tuggle's beaten remains.

Susan Victor also testified at Petitioner's trial. She corroborated Perez's version of the events that took place on the night in question, except that she stated that Perez had told her that Tuggle had been riding around with him and Petitioner; that at one point Petitioner and Tuggle got out of the car and Petitioner began hitting Tuggle with a metal pipe; that Perez tried to stop Petitioner but was unable to do so; and that after Petitioner beat Tuggle, Perez assisted Petitioner in putting Tuggle's body in the trunk of the car. According to Victor, Perez told her that they then returned to Victor's house; picked her up to take her to Detroit; and after they dropped Victor off at Perez's mother's house, Petitioner and Perez went a few blocks away and burned the car, apparently

The magistrate relied upon the Eleventh Circuit's decision in *United States v. Teague*, 953 F.2d 1525 (11th Cir. 1992), in support of its recommendation that Petitioner's claim must fail. The magistrate found the facts of the case at hand on all fours with *Teague*. The magistrate noted that in *Teague*, the defendant claimed a denial of his constitutional right to testify because his counsel did not call him as a witness; however, at the evidentiary hearing on the issue, the defense attorney testified that it was part of her normal practice to inform the client that he had the right to testify and that she probably explained to the defendant that it was his decision whether to take the stand. (J.A. at 242-43.) The defense counsel also expressed concern that she may not have made it clear to her client that the choice to testify belonged to him; however, the district court determined that an adequate advisement had been made, and the Eleventh Circuit affirmed. (J.A. at 243.) The magistrate in this case then analogized that a similar determination should be made in this case based upon Hildalgo's testimony. (J.A. at 243.)

On appeal, the government also relies upon *Teague* in support of its contention that the magistrate -- and ultimately the district court in adopting the magistrate's recommendation – properly found no merit to Petitioner's claim. Interestingly, Petitioner relies upon *Teague* as well in support of his claim that the magistrate erred in reaching his decision. Petitioner claims that the magistrate misapplied *Teague*, in that the Eleventh Circuit made clear that a defense counsel would be considered ineffective if he failed to inform the client that the ultimate decision to testify rests with the defendant. Based upon this Court's recent decision in *United States v. Webber*, 208 F.3d 545 (6th Cir. 2000), it is not necessary to conduct an inquiry into *Teague* and its application to the case at hand.

In *Webber*, the defendant raised two allegations of error on direct appeal of his conviction for conspiracy to possess with intent to distribute cocaine base, distribution of cocaine base, and aiding and abetting distribution of cocaine base: "(1) his right to testify on his own behalf was waived by his attorney and, (2) the trial court impermissibly 'chilled' his right to

he refused to offer the testimony of a client who elected to take the stand in his own behalf.

(J.A. at 241-42.)  In comparison, the magistrate found as follows regarding the testimony that Petitioner provided at the hearing:

> Petitioner's hearing testimony includes specific denial that Mr. Hildalgo explained his Fifth Amendment Rights. The tension between that specific denial and Mr. Hildalgo's more general testimony implicates the issue of their respective credibility.   Because the Petition challenges the adequacy of his professional services, it could reasonably be suggested that Mr. Hildalgo had a personal motivation to testify that he acted properly. That motivation, however, pales in comparison to the personal interest of Petitioner in promoting his own version of the facts. The clearly and vitally self-serving nature of Mr. Gonzales' testimony, in conjunction with his delay in raising his Fifth and Sixth Amendment claims, tips the balance on the issue of credibility in favor of Mr. Hildalgo.  Both witnesses were testifying to the events which occurred many years earlier.   Mr. Hildalgo readily admitted his lack of specific recall, and testified as to his experience and general practice, and only such specific memory as was refreshed by his review of transcript sections and the documents in this case. Although Petitioner's recollection was subject to the same passage of time, and his testimony was otherwise substantially devoid of detailed factual recollections, he asserted certainty that his attorney's explanation of his Fifth Amendment Rights was insufficient.    I find isolated certainty inherently suspicious and, again, I view the balance of credibility to favor Mr. Hildalgo's testimony.

(J.A. at 243-44 (footnote omitted).) The magistrate also noted that Petitioner "did not raise these claims until nearly six years after his conviction, and after his appeal of right was rejected." (J.A. at 244 n.1.)

with Tuggle's body still in the trunk.  Victor's aunt, Bonny Milanovich, also testified and stated that she was present during the visits by Petitioner and Perez on the night in question, and that at one point she overheard Petitioner tell Perez in Spanish that they had to hurry up and get rid of the body.

The medical examiner testified that he performed an autopsy on Tuggle's body and determined the cause of death to have been multiple blows to the head, and that Tuggle had been dead for several weeks before his body was recovered.

### DISCUSSION

Petitioner argues that the district court erred in denying his application for a writ of habeas corpus, where his counsel's failure to properly apprise Petitioner that his right to testify was a personal right which he could assert despite his counsel's advice to the contrary, fell below an objective standard of reasonableness and prejudiced Petitioner, thereby denying Petitioner his Sixth Amendment right to the effective assistance of counsel.  Petitioner claims that based upon the evidentiary hearing conducted on this issue, the magistrate clearly erred in finding counsel's experience significant, that counsel had properly advised Petitioner, and that Petitioner joined his counsel in the decision not to testify.

The government maintains that the district court impermissibly considered the merits of Petitioner's claim because Petitioner has procedurally defaulted. In other words, the government contends that because Petitioner failed to raise his claim of ineffective assistance of counsel before the state appellate courts, the district court should have required Petitioner to show cause and prejudice to excuse his procedural default before ever reaching the merits of Petitioner's claim.  The government further contends that Petitioner cannot show cause and prejudice to excuse his procedural default. However, the government argues in the alternative that even if this Court should excuse Petitioner's default, the district court properly concluded that the application for the writ should be denied where defense

counsel's performance in advising Petitioner of his right to testify was not below an objective standard of reasonableness.

We review a district court's decision in a habeas corpus proceeding *de novo*. *Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995). However, the Court reviews a district court's findings of fact for clear error. *See McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996). The provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") do not apply to this case inasmuch as Petitioner's application was filed before April 24, 1996, the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 322 (1997); *Herbert v. Billy,* 160 F.3d 1131, 1134-35 (6th Cir. 1998).

### 1.    Procedural Default – Cause and Prejudice Standard

It is well settled that a prisoner seeking habeas relief in federal court must have presented the claim upon which he seeks relief to the state appellate courts. Specifically, in *Coleman v. Thompson,* 501 U.S. 722, 750 (1982), the Supreme Court opined as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

In the case at hand, the Michigan appellate courts relied upon Michigan Court Rule 6.508(D) to preclude review of Petitioner's claim. The Michigan Court of Appeals, while not specifically citing the rule, opined as follows:

to testify was a right personal to him and that Petitioner could assert that right despite his attorney's advice to the contrary. After the hearing held on this issue, the magistrate issued a report and recommendation wherein he ultimately concluded as follows:

> In view of Mr. Hildalgo's [defense counsel's] statements as to his customary practice, I find it more likely that a sufficient Fifth Amendment advisement was issued, but that it was not adequately apprehended by Gonzales. Having observed both witnesses, and having evaluated their testimony in light of my own experience, I find Mr. Hildalgo more credible than Mr. Gonzales. Thus, I find that Petitioner's failure to assert his right to testify is not attributable to inadequate representation.

(J.A. at 245.)

The magistrate based this conclusion in part upon the testimony of defense counsel Michael Hildalgo, and made the following findings:

> Trial counsel, Mr. Hildalgo, testified that his office file on Petitioner's case has been lost in the course of relocating his practice on three different occasions since Petitioner's trial. Mr. Hildalgo did, however, testify from general recollection of his representation of Mr. Gonzales, reinforced by his review, prior to his hearing testimony, of the submissions of the parties and my original Report and Recommendation in the instant case, and a reading of portions of the trial transcripts, including his own final argument and the sentencing proceedings. It is fair to note that he did not have an independent recollection of the specific advice that he rendered to Mr. Gonzales on the issue of his right to testify. Nonetheless, Mr. Hildalgo was able to testify as to his customary practice with regard to advising his clients of their right to testify in criminal matters, and his lack of recollection of any instance in which he neglected to properly advise a client of his/her Fifth Amendment Rights, or in which

Defendant's trial counsel's failure to have defendant testify at trial or to inform defendant of his right to testify was also an issue which could have, and should have, been raised in defendant's original appeal. Consequently, it too is not properly before us. . . .

(J.A. at 79; *People v. Gonzales*, No. 14662 (Mich. Ct. App. Nov. 12, 1993) (unpublished memorandum).) Upon review of Petitioner's application for leave, the Michigan Supreme Court similarly opined when it held that,

On order of the Court, the delayed application for leave to appeal is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).

(J.A. at 81; *People v. Gonzales*, No. 99036 (Mich. Nov. 16, 1994) (unpublished order).)

Michigan Court Rule 6.508(D) is the state analog to federal exhaustion. In other words, the court rule requires that an appellant seeking additional review of a claim "which could have been raised on appeal from the conviction and sentence or in a prior motion" must demonstrate good cause for failure to raise such grounds on appeal, and actual prejudice caused from the irregularities to support the claim for relief. MICH. CT. R. 6.508(D). The Michigan appellate courts, aside from the court of appeals alternative holding, refused to consider Petitioner's claim because he had not shown cause and prejudice under the court rule.

A determination of whether a petitioner procedurally defaulted his claim brought before the federal court requires an analysis under the four-part test of *Maupin v. Smith*, 785

---

this case, we find that Petitioner cannot be deemed to have been so apprised.

In *People v. Reed*, 535 N.W.2d 496, 503 (Mich. 1995), the Michigan Supreme Court explained that "[b]efore October 1, 1989, the procedure for collateral review of criminal convictions in Michigan did not make any provision for finality of judgments. As a consequence, defendants could and did, repeatedly seek relief without limitation[;]" the court rule was enacted in order to rectify these repeated attempts at collateral review. Here, Petitioner was convicted in the Detroit Recorders Court on April 5, 1984, and the Michigan Court of Appeals affirmed Petitioner's conviction in an opinion dated January 10, 1986, well before the enactment of M.C.R. 6.508(D) and, as such, well before Petitioner could reasonably been apprised of M.C.R. 6.508(D)'s mandate of finality. *See Rogers*, 144 F.3d at 994 (citing *Doster v. Bannan*, 318 F.2d 453, 455 (6th Cir. 1963) ("'Under Michigan law there is no final time limitation upon the power of the trial court to grant a motion for new trial' . . . .") (quoting MICH. CT. R. 47 (1945))). Thus, in the case at hand, M.C.R. 6.508(D) cannot serve as an independent and adequate state ground upon which to base Petitioner's procedural default, and the third *Maupin* factor is therefore not met, thereby allowing for a review of Petitioner's habeas claim.

However, with that said, Petitioner's application for the writ was properly denied where, as explained in the following section, Petitioner has failed to show that his counsel's performance fell below a reasonable standard and prejudiced Petitioner so as to deprive Petitioner of his Sixth Amendment right. *See Strickland v. Washington*, 466 U.S. 668, 688-90 (1984).

## 2. Merits of Petitioner's Ineffective Assistance of Counsel Claim

Petitioner claims that he was denied the effective assistance of counsel in violation of his Sixth Amendment right by his counsel's failure to specifically inform Petitioner that the right

F.2d 135, 138 (6th Cir. 1986).[1]  The four factors a court is to consider under *Maupin* are as follows:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. [Fourth,] the petitioner must demonstrate under [*Wainwright v.*] *Sykes*, [433 U.S. 72 (1977)] that there was "cause" for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Id.* (citations omitted).

Here, as evidenced by the state appellate courts' decisions, there is an applicable state rule – Michigan Court Rule 6.508(D) – and that rule is enforced by the state courts, thus satisfying the first two *Maupin* factors.  However, a determination of the third *Maupin* requirement, that the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely, is not as clear.  The state ground upon which the Michigan appellate courts refused to consider Petitioner's claim, Michigan Court Rule 6.508(D), has recently been found inapplicable to a Michigan prisoner

---

[1] As noted in *Scott v. Mitchell*, "[a]lthough we have remained faithful to the analysis endorsed by *Maupin*, our more recent decisions have not always employed a '*Maupin* test' per se." 209 F.3d 854, 863 n.4 (6th Cir. 2000) (citing *Byrd v. Collins*, 209 F.3d 486, 520-21 (6th Cir. 2000) (articulating the factors from *Maupin* and related cases differently by analogy); *Jones v. Toombs*, 125 F.3d 945, 946 (6th Cir. 1997) (applying the *Coleman* formulation without mentioning *Maupin*, although reaching the same result)).

who brought his direct appeal prior to the rule's effective date of October 1, 1989, and we therefore found that 6.508(D) could not serve as an adequate and independent state ground for the prisoner's procedural default.  *See Rogers v. Howes*, 144 F.3d 900, 994 (6th Cir. 1998) ("[W]e hold that the substance of M.C.R. 6.508(D)(3) was not a firmly established and regularly followed procedural rule at the time of petitioner's conviction and thus was not an adequate and independent state procedural rule barring review of petitioner's habeas petition.") (citing *Borrie v. Makowski*, Nos. 95-2380, 95-2381, 1998 WL 30825, at **5 (6th Cir. Jan. 20, 1998) (unpublished)).

However, in *Luberda v. Trippett*, this Court expressly declined to adopt a bright line rule that 6.508(D) could not apply to any Michigan prisoner convicted before 6.508(D)'s effective date of October 1, 1989.  *See* 211 F.3d 1004, 1006 (6th Cir. 2000) ("[A] 'date of conviction' rule, first leads to absurd results and, second, rests on a shaky theoretical foundation.").  Moreover, the *Luberda* court "decline[d] to adopt any per se approach for pinpointing when M.C.R. 6.508(D) became 'firmly established' with respect to all habeas petitioners." *Id.* at 1008.  Rather, *Luberda* instructs that "federal courts must decide on a case-by-case basis whether, during the period that a defendant may, if he wishes, tailor his appeal to avoid the consequences of a state procedural rule, the 'defendant . . . could . . . be deemed to have been apprised of [the procedural rule's] existence.'" *Id.* (alteration in *Luberda*; internal quotation marks omitted) (citing *Ford v. Georgia*, 498 U.S. 411, 423 (1991)).

Because Petitioner was convicted and filed his direct appeal to the Michigan Court of Appeals well before M.C.R. 6.508(D)'s October 1, 1989 effective date, in accordance with *Luberda's* instruction, we will first determine whether during the period of time that Petitioner may have tailored his appeal to include his claim for ineffective assistance of counsel based on his attorney's alleged failure to properly advise Petitioner of his right to testify, Petitioner could be deemed to have been apprised of M.C.R. 6.508(D)'s existence.  Under the facts of