Calvin McQUEEN Petitioner–
Appellant,

v.

UNITED STATES of America
Respondent–Appellee.

No. 01–1591.

United States Court of Appeals,
Sixth Circuit.

Jan. 7, 2003.

Before KRUPANSKY, SILER, and
COLE, Circuit Judges.

PER CURIAM.

Defendant–Appellant Calvin McQueen appeals the judgment of the district court denying the motion to vacate his sentence under 28 U.S.C. § 2255. Appellant's § 2255 motion contends that his trial counsel was ineffective by failing to inform him of plea discussions and advise him as to whether to accept a plea offer. On August 19, 1997, the district court denied McQueen's § 2255 motion without holding an evidentiary hearing. On appeal, this Court held that the district court erred in not holding a hearing, and remanded the case for further proceedings. On remand, the district court held an evidentiary hearing, and denied petitioner relief.

For the reasons that follow, we AFFIRM the judgment of the district court.

I. BACKGROUND

McQueen was indicted in July, 1992, on a charge of conspiring to distribute cocaine. The penalty range for that offense was five to forty years. On August 26, 1992, the prosecutor sent defense counsel, Archie Hayman, a letter with a proposed plea agreement providing for a recommended sentence in the range of sixty to

sixty-three months. The deadline to accept this offer was September 3, 1992. The offer was not accepted.

On September 4, 1992, a grand jury returned a superseding indictment charging McQueen with conspiracy to obtain cocaine for distribution. One week later, McQueen was arraigned on the superseding indictment, and advised that the penalty range for this offense was ten years to life. Jury selection began on December 22, 1992, a guilty verdict was entered on January 12, 1993, and McQueen was sentenced to 240 months in prison on May 11, 1993.

On April 24, 1997, after the conviction was affirmed on direct appeal, McQueen filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that Hayman had provided ineffective assistance because: (1) he did not advise McQueen regarding the desirability of entering a guilty plea: (2) he did not properly prepare and investigate the facts in preparation for trial; (3) he did not make proper objections to the introduction of evidence during trial; and (4) he stipulated to the base offense level. Without holding an evidentiary hearing, the district court denied this motion.

McQueen appealed the denial of relief to this Court. In an Order filed February 2, 2000, this Court affirmed the denial of McQueen's second, third, and fourth claims, and remanded the case on the basis of the first claim. We found that there was a factual dispute on this question, and that the district court abused its discretion by failing to make specific factual findings regarding this claim This Court directed the district court to determine whether Hayman adequately advised McQueen regarding consideration of the proposed plea agreement. Specifically, the February 2, 2000 Order stated that three factual issues needed to be determined: (1) whether McQueen was willing to plead guilty; (2) whether counsel adequately advised McQueen regarding the desirability of pleading guilty; and (3) whether trial counsel fully communicated the terms of the plea offer to McQueen.

At the evidentiary hearing on remand, McQueen testified that when he was arrested he was handed a plea agreement providing for a sentence of five years and told to sign it. McQueen stated that he did not sign this agreement because he did not have legal representation. McQueen also testified that he informed Hayman about this plea offer, and Hayman just stated that they would talk about it later, which McQueen claims they never did. McQueen later testified that when he again asked Hayman about the plea offer, Hayman said that they were not going to talk about it at that point, never provided any further detail on it, and simply said that they were going to trial.

McQueen also testified that Hayman never told him that it would be in his best interest to accept the plea offer. McQueen stated that he would have pleaded guilty had he been properly advised.

The testimony of Hayman, who became a Circuit Judge in Genesee County, Michigan in 1996, told a different story. He testified at the evidentiary hearing as follows:

Q: Now, did you discuss that plea agreement with Mr. McQueen?

A: It would have been my practice to discuss this plea agreement with Mr. McQueen, yes.

Q: Did you show it to him?

A: Yes. I would have shown it to him.

Q: Did you go over its terms with him so that he would understand the option that he was facing?

A: Yes, I would have gone over it and discussed with him what options would

have been available and gotten some idea from him as to how he wished to have proceeded with respect to that.

Q: Did you explain to him the federal sentencing guidelines and the impact of those guidelines on his actual sentencing?

A: Yes. I would have talked to him about the guidelines....

Q: Okay. Now you're saying would have. Do I understand that now this is almost eight years later, you don't recall the specific discussion with Mr. McQueen?

A: I can't tell you specific—the specific discussion, no. All I can tell you is that I—it would have been my routine and practice to share with my clients always what agreements would have been presented because as a lawyer that was my obligation and responsibility. And I always carried that responsibility out ...

Q: Are you confident you showed that plea agreement to Mr. McQueen?

A: I'm absolutely confident I showed it to him.

Hayman also testified that he indicated to McQueen that if he had anything to do with the crime. "I felt that he would be better off taking the plea agreement than going to trial because if he went to trial and lost I believe I had indicated to him at that time that he could face any where up to 20 to 30 years in prison." Hayman stated that he "tried to impress upon [McQueen] how important it was for him to come forward and to be honest with me and let me know if he had knew [sic] anything about this." According to Hayman, McQueen never admitted to Hayman that he was involved with the crime in any way. Hayman's testimony continued:

Q: Notwithstanding his denial did you advise [McQueen] that he should seriously consider this plea offer if he had

anything whatsoever to do with such an offense?

A: Yeah. My approach was to indicate to Mr. McQueen that because I didn't have any statements, I had to rely on him for any information that I might have. I had to count on him to be honest with me, that's—I had no other choice.

And I indicated to him that if he had anything at all to do with this that he should let me know or give me some indication so that I would know how to advise him as to whether or not to take the—to consider the plea agreement....

Q: And he chose—he told you again that he did not have anything to do with this crime that was charged?

A: That is correct.

Q: And for that reason he said he did not want to sign the plea agreement?

A: He indicated to me he was not interested in the plea agreement.

Hayman also testified that, as the trial progressed and McQueen's prospects for acquittal looked poor, he discussed with McQueen the possibility of pleading guilty and suggested that he might be able to still get a plea offer from the prosecution. Hayman testified that McQueen responded only by reiterating his innocence.

The district court ruled that McQueen's claim of ineffective assistance did not merit relief.

## II.  ANALYSIS

### A.  Standard of Review

This Court reviews de novo district court rulings on habeas petitions, but reviews findings of fact made by the district court for clear error. *Fair v. United States*, 157 F.3d 427, 430 (6th Cir.1998).

*Cardinal v. United States,* 954 F.2d 359, 362 (6th Cir.1992).

### B. Applicable Law

Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir.1980). A criminal defendant is entitled to the assistance of an attorney whose performance is effective enough to ensure that the trial is fair. *See Strickland. v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to demonstrate that he was denied ineffective assistance of counsel, the defendant must show that (1) the attorney made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defendant. *Id.* at 687, 104 S.Ct. 2052.

To satisfy the requirements of the first prong, a defendant must show that the performance of counsel was below an objective standard of reasonableness. *Moss v. Hofbauer,* 286 F.3d 851, 859 (6th Cir. 2002). An incompetently counseled decision to reject a plea offer and go to trial falls within the range of protection provided by the Sixth Amendment. *Turner v. Tennessee,* 858 F.2d 1201, 1205 (6th Cir. 1988), *vacated on other grounds,* 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989).

### C. Application

#### 1. McQueen's Reliance on *Boria*

McQueen relies heavily on the case of *Boria v. Keane,* 83 F.3d 48 (2d Cir.1996). There, the court accepted Boria's claim that he was denied effective assistance of counsel when the government offered him a plea bargain and his attorney allowed him to reject the offer without giving him any advice as to the desirability of accepting it. *Id.* at 50.

We first note that we are not bound by the Second Circuit's opinion in *Boria.* Additionally, however, McQueen's reliance on *Boria* is unpersuasive. In finding as it did, the Second Circuit relied on a number of factors that were not present in McQueen's case. The counsel in *Boria* admitted that he did not discuss with the defendant the advisability of accepting the plea offer, he had a firm belief that accepting the plea was in the best interest of his client, and, had he been appropriately diligent in his professional conduct, he would have had even more support for this conviction. *Boria,* 83 F.3d at 51, 53. Hayman, in contrast, testified that he did discuss the desirability of the plea offer with McQueen, did not believe that it was a grave error to proceed to trial, and was not privy to certain evidence that may have influenced the decision despite his appropriate professional diligence.

#### 2. District Court's Findings of Fact and Precedent of this Court

In the end, McQueen's appeal fails because the district court's findings of fact were not clearly erroneous. In response to its directives on remand from this Court, the district court found that McQueen did not show that he was willing to plead guilty, that Hayman adequately advised McQueen regarding the desirability of pleading guilty, and that Hayman did fully communicate the terms of the plea offer to McQueen. In making these findings, the district court credited the testimony of Hayman over that of McQueen

In the context of a claim of ineffective assistance of counsel, there is a strong presumption that the attorney has "rendered adequate assistance and made all significant decisions in the exercise of rea-

sonable professional judgment." *Wong v. Money*, 142 F.3d 313, 319 (6th Cir.1998) (citation omitted). The *Strickland* Court held that assessment of defense counsel's performance must be "highly deferential." 466 U.S. at 689, 104 S.Ct. 2052.

In terms of the specific decision to credit Hayman's testimony over that of McQueen, this Court was confronted with a similar issue in *Gonzales v. Elo*, 233 F.3d 348 (6th Cir.2000). In *Gonzales*, the petitioner claimed that he was denied effective assistance of counsel by his attorney's failure to inform him that he could assert the right to testify despite his attorney advising him not to do so. 233 F.3d at 354. The magistrate judge's report, which was adopted by the district court, stated that "[i]n view of [defense counsel's] statements as to his customary practice, I find it more likely that a sufficient Fifth Amendment advisement was issued ... having evaluated their testimony in light of my own experience, I find [defense counsel] more credible than [the petitioner]." *Id.* at 355. In addition, defense counsel testified that "he did not have an independent recollection of the specific advice that he rendered to [the petitioner] on the issue of his right to testify. Nonetheless, [defense counsel] was able to testify as to his customary practice with regard to advising his clients of their right to testify in criminal matters." *Id.*

In reaching a decision in *Gonzales*, this Court noted that the magistrate credited the defense counsel's testimony as to his customary practices, and discredited the testimony of the petitioner. *Id.* at 357. It then went on to find that "[b]ecause this court does not disturb issues of credibility, the magistrate (and therefore the district court) did not clearly err in making his findings, and ... Petitioner's argument thus fails." *Id.* The ruling in *Gonzales* compels the same result in the instant case. This Court does not disturb the credibility findings of the district court.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.