**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0544n.06
Filed: September 5, 2008

**No. 06-2143**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANDREW ROUSH, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| SHERRY BURT, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

**Before: SILER, GIBBONS and McKEAGUE, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Petitioner-appellant Andrew Roush appeals the district court's denial of his *habeas corpus* petition. Roush argues that the district court erred in not finding that his trial counsel, Virginia Cairns, was ineffective at his trial. For the following reasons, we affirm the district court's decision.

I.

In 1996, petitioner Andrew Roush was charged with two counts of first-degree criminal sexual conduct. *Roush v. Burt*, No. 02-CV-73281-DT, 2006 U.S. Dist. LEXIS 54438, at *1 (E.D. Mich. Aug. 7, 2006). These charges stemmed from allegations that in 1993 Roush sexually assaulted his seven-year-old stepdaughter by penetrating her anus. *Id*. at *1-2. The child did not disclose the alleged abuse until 1996 and she did not testify about the abuse until 1997 at which point she was

eleven years old. *Id.* at *2. At trial, the prosecution presented Dr. Stephen Guertin, who testified that "he examined the complainant about three years after the alleged crime and observed a small scar running from the inside to the outside of her anal canal." *Id.* Based on these facts and the oral history of the child, Dr. Guertin concluded that a sexual assault had occurred. *Id.*

In an attempt to address these allegations, Roush's trial attorney, Virginia Cairns, crafted an alternative defense theory at the trial – that the victim had in fact been assaulted by her grandfather; that the child's confusion stemmed from the extended time between the assault and the trial; and that the child had been prompted by both her grandmother and mother to accuse Roush. *Id.*

On January 23, 1997, Roush was convicted on one of the two counts of first-degree criminal sexual conduct and sentenced to life in prison. *Id.* at *2-3. In an appeal of right, Roush claimed that (1) the trial court erred in permitting Dr. Guertin to give hearsay testimony; (2) the trial court erred in allowing Dr. Guertin to vouch for the child and allowing the prosecution to rely on that vouching in his closing arguments; and (3) defense counsel was ineffective for inadequately objecting to these errors. *People v. Roush*, 1998 Mich. App. LEXIS 862, at *1, *5, *7 (Dec. 1, 1998) (per curiam). The Michigan Court of Appeals affirmed Roush's conviction, finding that his claims had no merit. *Id.* at *7. Roush then raised these claims again before the Michigan Supreme Court, which denied Roush leave to appeal. *People v. Roush*, 603 N.W.2d 265 (Mich. 1999) (table).

On October 3, 2000, Roush filed a *pro se* motion for relief from judgment pursuant to Michigan Court Rules 6.501 *et seq.*, arguing that (1) the trial court erred by admitting hearsay evidence; (2) the trial court erred by allowing the prosecution to recall a witness over the objection of the defendant's counsel; and (3) his trial counsel was ineffective. The trial court denied Roush's

*Roush v. Burt*
No. 06-2143

motion, responding to his ineffective assistance of counsel claim by noting that Roush's allegations

"do not reflect deficient performance or any prejudice to the defendant." *People v. Roush*, No.

96-3122 FC, slip op. at 2 (Calhoun County Cir. Ct. Nov. 17, 2000).  The trial court also denied

Roush's motion for reconsideration.

As noted by the district court, Roush then appealed the trial court's decision, arguing that:

> (1) his trial attorney was ineffective for (a) not interviewing known witnesses, (b) not discussing the case or any trial strategy with him, (c) not performing any investigation or obtaining any documents before trial, and (d) not permitting him to testify and not explaining the meaning of "impeach" so that he could make an informed decision to testify; (2) the combination of defense counsel's errors deprived him of effective assistance and the right to a fair trial; (3) the trial court permitted improper hearsay evidence by a doctor; (4) the trial court abused its discretion by permitting the prosecutor to recall the complainant over defense counsel's objections; (5) the trial court lacked jurisdiction to try him; and (6) the trial court should have held an evidentiary hearing on his claims of ineffective assistance of trial counsel.

*Roush*, 2006 U.S. Dist. LEXIS 54438, at *4-5.  Both the Michigan Court of Appeals and

subsequently the Michigan Supreme Court summarily denied Roush's delayed application for leave

to appeal, stating that his applications failed to meet the burden of establishing entitlement to relief

as required by Michigan Court Rule 6.508(D).  *See People v. Roush,* No. 236736 (Mich. Ct. App.

Dec. 10, 2001); *People v. Roush*, 649 N.W.2d 80 (Mich. 2002) (table).

Roush then filed his *pro se habeas corpus* petition with the district court, asserting, *inter alia*,

the following grounds for relief:

> Petitioner is entitled to a writ of habeas corpus where defense counsel was ineffective by not interviewing known witnesses for the Petitioner's trial.

> Petitioner is entitled to a writ of habeas corpus where defense counsel was ineffective by not spending any time with the petitioner discussing the case or any strategy with the Petitioner.

> Petitioner is entitled to a writ of habeas corpus where defense counsel was ineffective by not performing any investigation or obtaining any documents prior to trial.
>
> Petitioner is entitled to a writ of habeas corpus where (1) defense counsel was ineffective by not having the Petitioner testify and (2) for not explaining what 'impeach' meant so the petitioner could make an informed decision to testify.
>
> Petitioner is entitled to a writ of habeas corpus where if one of the errors of counsel's ineffectiveness alone didn't deprive Petitioner of a fair trial a combination of all these errors did deprive the petitioner of his right to the effective assistance of counsel and a right to a fair trial.

*Roush*, 2006 U.S. Dist. LEXIS 54438, at *6-8. After receiving the respondent's answer, the district court appointed counsel for Roush, who then supplemented his *habeas corpus* petition with a claim of ineffective assistance of appellate counsel.

The district court evaluated Roush's claims in an order of January 18, 2005. *Roush v. Burt*, No. 02-CV-73281-DT (E.D. Mich. Jan. 18, 2005). At that time, the district court ordered an evidentiary hearing to evaluate Roush's ineffective assistance of counsel claims. However, following the evidentiary hearing, the district court dismissed the claims and denied his petition for *habeas corpus*, concluding that "it cannot be said that Ms. Cairns was ineffective. Petitioner had a fair trial, and he was not entitled to perfect representation." *Roush*, 2006 U.S. Dist. LEXIS 54438, at *29.

Roush now appeals the district court's decision, advancing the following grounds for his ineffective assistance of counsel claim:

> Roush's Sixth Amendment Right to the Effective Assistance Of Counsel Was Violated By His Appointed Trial Counsel, Who Failed to Reasonably: Investigate the State's Alleged Medical Evidence of Abuse, Interview a Crucial Witness, or Meet With Her Client So That He Could Meaningfully Participate In His Defense and Make a Reasonable Decision Whether to Testify. As a Result, The State Court's

Finding Was Contrary to and an Unreasonable Application of *Strickland*.

Petitioner's Br., at i.

II.

The warden argues that Roush's claims have been procedurally defaulted as both the Michigan Supreme Court and the Michigan Court of Appeals denied Roush's application for leave to appeal pursuant to Michigan Court Rule ("MCR") 6.508(D). *See Roush*, 649 N.W.2d 80; *People v. Roush*, No. 96-003122 (Mich. Ct. App. Dec. 10, 2001). This court has previously considered whether and under what circumstances MCR 6.508(D) might serve as an "independent and adequate" ground to bar review of a petitioner's federal claims. *See, e.g.*, *Ivory v. Jackson*, 509 F.3d 284, 291-93 (6th Cir. 2007); *Abela v. Martin*, 380 F.3d 915, 921-24 (6th Cir. 2004); *Simpson v. Jones*, 238 F.3d 399, 405-08 (6th Cir. 2000). However, "'federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits,' especially where the procedural default issue is 'complicated' and 'is unnecessary to [the] disposition of the case.'" *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003)); *see also Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law."). Therefore, because we affirm the district court's decision on the merits, we leave issues regarding procedural default and the generic use of MCR 6.508(D) for another day.[1]

---

[1]For these reasons, we also address the merits of Roush's federal claims without considering whether Roush has exhausted the remedies available to him in state court. *See* 28 U.S.C. §

III.

In order to succeed on a claim of ineffective assistance of counsel, a petitioner must satisfy

the well-rehearsed two-prong *Strickland* test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). In employing this two-prong analysis,

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id*. at 689. Thus, "[b]ecause of the difficulties inherent in making the evaluation, a court must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal

quotation marks and citation omitted).

In turn, "strategic choices made after thorough investigation of law and facts relevant to

plausible options are virtually unchallengeable." *Id*. at 690. However, "strategic choices made after

less than complete investigation are reasonable precisely to the extent that reasonable professional

2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

judgments support the limitations on investigation." *Id*. at 690-91. In sum, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id*. at 691.

As a general rule, "[w]e review de novo claims of ineffective assistance of counsel because they are mixed questions of law and fact." *United States v. Wagner*, 382 F.3d 598, 615 (6th Cir. 2004). However, "any findings of fact pertinent to the ineffective assistance of counsel inquiry are subject to a clearly erroneous standard of review." *Tate v. United States*, No. 96-2099, 1999 U.S. App. LEXIS 17396, at *7 (6th Cir. July 21, 1999). In other words, "[a]lthough the district court's findings of fact are subject to the clearly erroneous standard of review . . . the performance and prejudice components of the *Strickland* test are mixed questions of law and fact freely reviewable by the appellate court." *Blackburn v. Foltz*, 828 F.2d 1177, 1181 (6th Cir. 1987) (citation omitted). As a result, the district court's "factual findings [that] rest upon credibility determinations . . . are afforded great deference by reviewing courts." *Tate*, 1999 U.S. App. LEXIS 17396, at *7. With these standards in mind, we now turn our attention to the merits of Roush's ineffective assistance of counsel claim.

A.

Roush advances a two-prong argument assailing Cairns's failure to present competing expert testimony at trial to counter Dr. Guertin's testimony about the scar. The existence of this scar played a significant role in Dr. Guertin's expert testimony at Roush's trial, serving as foundation for Dr.

Guertin's conclusion that the victim was in fact raped. In the first instance, Roush claims that Cairns did not in fact consult with an expert; in the alternative, Roush claims that even if Cairns did consult with an expert, that consultation was wholly inadequate and constituted ineffective assistance of counsel.

As evidence of this claim that Cairns did not in fact consult with an expert, Roush has presented two affidavits from Dr. Leandre Bautista, the doctor with whom Cairns claims to have consulted regarding the case, both of which state that Dr. Bautista did not, to the best of his recollection, consult with Cairns on any sexual assault case. In fact, in his first affidavit, Dr. Bautista completely disavows knowing Cairns. Roush argues that this fact alone, if true, would constitute ineffective assistance of counsel, a conclusion bolstered by the Second Circuit's proclamation in *Eze v. Senkowski*: "when a defendant is accused of sexually abusing a child and the evidence is such that the case will turn on accepting one party's word over the other's, the need for defense counsel to, at a minimum, consult with an expert to become educated about the 'vagaries of abuse indicia' is critical." 321 F.3d 110, 128 (2d Cir. 2003) (citation omitted).

Cairns has emphatically contested Dr. Bautista's affidavits, stating that she in fact consulted with Dr. Bautista regarding Roush's case. Cairns also provided a memorandum in which she recounted the details of her conversation with Dr. Bautista, noting that Dr. Bautista had said "the scar is without doubt evidence of anal injury . . . caused by blunt force trauma." Such blunt force trauma was "strong evidence" of a "rip." Cairns claims that based on this evaluation she chose not to pursue a theory at trial questioning whether a rape in fact existed, but instead chose to present a theory that pointed to another individual, the victim's grandfather, as the true perpetrator of the crime. Cairns,

however, does admit that she did not send Dr. Bautista a copy of Dr. Guetin's report, nor did she provide Dr. Bautista any photographs or slides from the examination of the victim.

Addressing the factual dispute – whether Cairns did or did not in fact consult with Dr. Bautista – the district court reached the following conclusion:

> Dr. Bautista's statements cannot be reconciled with Ms. Cairns' testimony. The Court finds Ms. Cairns to be more credible because she has provided written documentation demonstrating that she represented Dr. Bautista and his wife in a real estate transaction and that she bought Mrs. Bautista's horse. Dr. Bautista's professed failure to recall Ms. Cairns appears to be attributable to his fear of being sued and his reluctance to become involved in this case. He stated at his deposition that he signed his affidavits at the request of the Defender's Office, and he wished that he had never signed them.

*Roush*, 2006 U.S. Dist. LEXIS 54438, at *21-22. This credibility determination, well-grounded in the trial record, is a reasonable conclusion given the facts of the case; as already noted, such credibility determinations are reviewed for clear error, of which we find none.

In the alternative, Roush claims that even assuming Cairns did in fact consult with Dr. Bautista, her strategic decision not to challenge the physical evidence at trial amounted to ineffective assistance of counsel. To bolster this argument, Roush points to a number of cases which emphasize the importance of investigating and challenging physical evidence even when trial counsel thinks it in his or her client's strategic interest to concede that the underlying acts in question occurred. *Richey v. Mitchell*, 395 F.3d 660, 685 (6th Cir.) (stating that "even if counsel had reasonably believed that [the fire had been started by someone else], he could not have made an informed choice without reasonably investigating the alternatives") *vacated sub nom. Bradshaw v. Richey*, 546 U.S. 74 (2005); *Gersten v. Senkowski*, 426 F.3d 588, 610-11 (2d Cir. 2005) ("There was nothing strategic

about a decision to concede the physical evidence, with no educated basis for doing so, in favor of uninvestigated and uninvestigatable theories about the victim's relationship with her boyfriend and her ability or willingness to testify against her own father."); *Foster v. Lockhart*, 9 F.3d 722, 726 (8th Cir. 1993) ("The attorney's presentation of an alibi defense does not excuse his failure to investigate further and present evidence of [the defendant's] impotency. A tactical decision to pursue one defense does not excuse failure to present another defense that would bolster rather than detract from the primary defense." (internal brackets, quotation marks, and citation omitted)).

As the district court explained, however, the core problem with Roush's argument is that Cairns's strategic decision not to pursue further medical expert consultation for presentation at trial was because of the risk to Roush:

> Ms. Cairns has said that she decided to use Dr. Stephen Guertin's testimony to support the defense theory that someone other than Petitioner sodomized the complainant. Ms. Cairns concluded that relying on Dr. Guertin's testimony was less risky than using her own expert because the anal scar on the complainant had an indefinite age. Ms. Cairns feared that, if a defense expert examined the complainant, he or she might have found incriminating evidence, and if the defense expert talked to the complainant, the complainant might have named Petitioner as the perpetrator.

*Roush*, 2006 U.S. Dist. LEXIS 54438, at *22-23. In other words, Cairns claims to have foreclosed further investigation not solely because she felt that she had a better alternative theory for trial, but because further medical investigation posed too high a risk to Roush. In contrast, the cases cited by Roush all involve circumstances where additional research and investigation by defense counsel would not, itself, have posed a risk to the defendant. *See Richey*, 395 F.3d at 685 ("Given the testimony of witnesses that Richey was upset at his ex-girlfriend and had made threatening comments, trial counsel's theory – that the fire was intentionally started by someone else – was

doomed to fail"); *Gersten*, 426 F.3d at 610 (criticizing counsel's performance because further investigation would have come at no cost and noting that "[f]or counsel to forego even an investigation of the possibility of challenging the physical evidence, in favor of an unsupported theory that someone other than the defendant penetrated the victim, or an unsupported assumption that the victim would not testify, was not an objectively reasonable performance"); *Foster*, 9 F.3d at 726 ("Contrary to the reasoning of Foster's attorney, an impotency defense would have reinforced Foster's alibi defense by showing it was even more unlikely Foster raped the victim.").

While in hindsight we might question whether Cairns' decision correctly balanced the risks to Roush, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. In turn, given *Strickland's* "highly deferential" standard, Roush simply cannot "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotation marks and citation omitted).

B.

Roush claims that his counsel was ineffective for failing to interview an "important witness, Kristen Kilbourn, about her knowledge regarding the family dynamics surrounding the allegations in this case." More specifically, Roush contends that Kilbourn could have provided information regarding the animosity that allegedly existed between Roush and the victim's mother, Penny Roush, at the time of the alleged sexual assault. This testimony, claims Roush, had a "unique ability to give voice to Penny Roush's powerful motive to fabricate a claim against [Roush] through her children."

This claim fails for a number of reasons. First, assuming *arguendo* that the testimony Kilbourn could have provided would not have constituted hearsay,[2] the district court, after conducting an evidentiary hearing on the matter, appears to have concluded that Cairns did in fact speak with Kilbourn. *Roush*, 2006 U.S. Dist. LEXIS 54438, at *16. Indeed, Roush notes this very point but hopes to differentiate between Cairns speaking with Kilbourn and interviewing Kilbourn. The district court's conclusion that Cairns did speak with Kilbourn, a factual determination reviewed for clear error, is a reasonable conclusion given the record. And, given the deferential stance articulated by *Strickland*, there appears to be no reason to find that Cairns was ineffective in her decision not to investigate further what information Kilbourn might have been able to provide as a witness or in her decision not to have Kilbourn testify.

C.

Roush also claims that Cairns failed to adequately discuss his trial strategy with him, which caused Cairns to present an ineffective alternative theory at trial. According to Roush, had Cairns spent additional time discussing the circumstances surrounding the alleged rape, she would have discovered Penny Roush's motive to fabricate the rape. At the core of this claim stands a factual dispute regarding the number and length of the visits paid by Cairns to Roush prior to the trial. The district court, noting this dispute, stated, "To the extent that Petitioner's testimony differs from Ms. Cairns' testimony, the Court finds Ms. Cairns to be more credible." *Roush*, 2006 U.S. Dist. LEXIS

---

[2]Some of the testimony that Roush claims could have been provided by Kilbourn includes testimony regarding statements made by Penny Roush. For this reason, respondent contends that much of Kilbourn's testimony would have been inadmissible hearsay.

54438, at *19. As noted above, we review credibility determinations of the district court for clear error; in doing so, we find that the district court did not err in finding Cairns more credible, a determination that is dispositive of this claim.

D.

Roush further claims that Cairns "neglected to reasonably educate [him] as to his right to testify on his own behalf." This claim, however, is without merit. As this court discussed at length in *United States v. Webber*:

> Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is strongly presumed to have rendered adequate assistance in carrying out the general duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record.

208 F.3d 545, 551 (6th Cir. 2000) (internal citations, quotation marks, and footnote omitted). Indeed, when such circumstances obtain, "Petitioner's assent is presumed *as is the effectiveness of Petitioner's counsel*, barring any indication by Petitioner at trial that he disagreed with his counsel." *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000) (emphasis added). Citing the *Elo* framework, the district court concluded, "[t]he record indicates that Petitioner and Ms. Cairns decided jointly not to have Petitioner testify. There is no indication in the transcript of trial that Petitioner wanted to testify or that he disagreed with defense counsel about whether he should take the stand." *Roush*,

2006 U.S. Dist. LEXIS 54438, at *27-28. Given the controlling *Webber* and *Elo* precedent, this factual determination by the district court, reviewed for clear error, disposes of Roush's claim that Cairns failed to "educate" him regarding his right to testify.

IV.

For the foregoing reasons, we affirm the judgment of the district court.